[No. A111355. First Dist., Div. Four. Jan. 31, 2006.]

SCOTT JOHNSON et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

**COUNSEL**

Andrew M. Zacks, James B. Kraus and Paul F. Utrecht for Plaintiffs and Appellants.

Dennis J. Herrera, Wayne K. Snodgrass and Vince Chhabria for Defendants and Respondents.

**OPINION**

**SEPULVEDA, Acting P. J.**—Appellants Scott Johnson and Small Property Owners of San Francisco, Inc. (SPOSF), appeal a judgment in favor of respondents City and County of San Francisco and City and County of San Francisco Board of Supervisors (collectively, the City) after the trial court denied appellants' petition for writ of mandate, concluding that a notice requirement in the City's rental ordinance was not preempted by the Ellis Act (or Act) (Gov. Code,[1] § 7060 et seq.). We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

■ The San Francisco Administrative Code requires landlords who seek eviction under the Ellis Act to pay their tenants' relocation costs; people with disabilities or who are 62 years old or older receive additional payments. (S.F. Admin. Code, § 37.9A, subd. (e)(3)(A)–(D).) Landlords also are required to notify their tenants about their right to receive payment and "the amount of payment which the landlord *believes to be due*." (S.F. Admin. Code, § 37.9A, subd. (e)(4), italics added.) This so-called belief requirement is the only portion of the San Francisco Administrative Code that is at issue in this appeal.

Appellant Johnson owns an undivided interest in real property located at 744 Union Street in San Francisco and, with another individual, has an exclusive right to occupy unit No. 6 in that building. In 2004, Johnson and his co-owners of 744 Union Street hired an attorney to help them evict the tenants occupying unit No. 6. Their attorney prepared a notice in September 2004 that stated, in part, "The Owner is aware of circumstances that might entitle you to receive payment under [San Francisco Administrative Code] Section 37.9A(e). Should you claim a right to relocation assistance, demand is hereby made that you provide counsel for Owner any and all information that you may rely on to claim said entitlement pursuant to the Government Code or [San Francisco] Rent Ordinance, including the factual and legal basis for your belief." According to Johnson, he lacked sufficient information to comply with the belief requirement.[2]

Appellant SPOSF is an organization of renters and small property owners that advocates home ownership in San Francisco. SPOSF includes members

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] Johnson's tenants demurred to a subsequent unlawful detainer action, claiming in part that the notice to quit violated the belief requirement. The trial court sustained the demurrer without leave to amend based on the fact Johnson failed to comply with the belief requirement, and Johnson appealed to the appellate division of the San Francisco Superior Court on August 26, 2005. The unlawful detainer action is not currently before this court.

who have invoked the Ellis Act and who plan to do so in the future. At least one member of the organization has served termination notices with the same language found to be defective in Johnson's unlawful detainer action.

Appellants filed their complaint on May 6, 2005. They alleged that the belief requirement is facially invalid because it is not authorized by the Ellis Act. The complaint sought a writ of mandate and declaratory relief. Appellants filed a motion for an order granting their petition for writ of mandate, arguing that the belief requirement is preempted by the Ellis Act and cannot be harmonized with the Act. The City opposed the petition, arguing that writ relief was not appropriate and that the belief requirement was not preempted.[3]

The trial court denied appellants' petition for a writ of mandate, finding that the Ellis Act did not preempt the belief requirement. The trial court also found that writ relief was not appropriate because (1) disputes were unlikely to arise in the future because it is easy to comply with the belief requirement, and (2) owners may adjudicate any disputes that do arise in the course of unlawful detainer proceedings. The trial court entered judgment,[4] and appellants timely appealed.

## DISCUSSION

### A. *Standard of Review.*

In denying the petition for writ of mandate, the trial court ruled as a matter of law that the City ordinance is not preempted by the Ellis Act. We review this legal conclusion de novo. (*Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 678–679 [16 Cal.Rptr.3d 13]; see also *Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 59 [62 Cal.Rptr.2d 600] [de novo review of determination whether to issue writ of mandate where case involves interpretation of statute].)

### B. *The Ellis Act.*

The Legislature enacted the Ellis Act following the California Supreme Court's opinion in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207

---

[3] Respondents also argued that SPOSF lacked standing and that the petition was barred by collateral estoppel and mootness, arguments respondents apparently have abandoned on appeal.

[4] Appellants' complaint sought declaratory relief, alleging that a controversy existed between appellants and the City because they disagreed over whether the belief requirement was preempted and unauthorized by the Ellis Act. Although the parties did not brief the declaratory relief claim in the trial court, appellants requested at the hearing on the matter, and respondents did not object, that the trial court rule on the issue so that the parties could "get a judgment entered one way or another." The judgment stated that "[p]etitioners have no need for, and are therefore not entitled to, declaratory relief as to whether the Belief Requirement is valid."

Cal.Rptr. 285, 688 P.2d 894], upholding a city ordinance that required owners of residential rental property to obtain a permit before they could remove property from the rental market. (§ 7060.7.) "[T]he Act was intended to overrule the *Nash* decision so as to permit landlords the unfettered right to remove all residential rental units from the market, consistent, of course, with guidelines as set forth in the Act and adopted by local governments in accordance thereto." (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 165 [249 Cal.Rptr. 732] (*Yarmark*); see § 7060.) The Act does not diminish or enhance a local government's ability "to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (§ 7060.1, subd. (c).) It likewise does not interfere with a local government's ability to regulate land use or override "procedural protections designed to prevent abuse of the right to evict tenants." (§ 7060.7, subd. (c).)

A tenant facing an unlawful detainer action under the Ellis Act may assert as a defense that his or her landlord failed to comply with the provisions of the Act or any statutes, ordinances, or regulations adopted pursuant to the Act. (§ 7060.6.)

C. *The Ellis Act Preempts the Belief Requirement.*

"A city or county may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations that do not conflict with general law. (Cal. Const., art. XI, § 7.) If local legislation conflicts with state law, it is preempted by the state law and is void. [Citation.] A conflict exists when the local legislation contradicts state law. Local legislation contradicts state law when it is inimical to it. [Citations.]" (*Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th 580, 587 [19 Cal.Rptr.3d 894].)

A conflict between local ordinance and state law exists if the local law duplicates, contradicts, or regulates an area fully occupied by general law, either expressly or by legislative implication. (*Yarmark, supra,* 203 Cal.App.3d at p. 161.) "The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law. [Citation.] [¶] If the local legislation does not expressly contradict or duplicate state law, its validity must be evaluated under implied preemption principles. 'In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme. There are three tests: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not

tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." [Citation.]' [Citation.]" (*Id.* at p. 162; see also *Channing Properties v. City of Berkeley* (1992) 11 Cal.App.4th 88, 93 [14 Cal.Rptr.2d 32] (*Channing Properties*).) Placing requirements on landlords that are inconsistent with their right to go out of business under the Ellis Act "imposes a prohibitive price on the exercise of the right under the Act." (*Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524, 531 [251 Cal.Rptr. 350].)

In *Yarmark, supra*, 203 Cal.App.3d 153, the court considered amendments to the Santa Monica City Charter that prohibited landlords from evicting tenants where they could make a fair return unless the rental units they owned were uninhabitable or unless the landlords promised to develop new multifamily dwelling units subject to rent control. (*Yarmark, supra*, at p. 164.) The court held that the charter amendments were preempted because they directly contradicted an area fully occupied by the Ellis Act, which permits landlords to leave the rental market even if they could make a fair return and the property is habitable. (203 Cal.App.3d at pp. 164–165.) "The Ellis Act imposes limits on a city's right to exercise its police power to create substantive defenses for use in summary eviction proceedings." (*Id.* at p. 164.) While the Ellis Act does not prohibit local governments from providing procedural protections designed to prevent abuse of the right to evict tenants (§ 7060.7, subd. (c)), it "completely occupies the field of substantive eviction controls over landlords who wish to withdraw" all units from the residential rental market. (*Yarmark, supra*, at p. 167.)

■ Appellants argue that the Ellis Act preempts the belief requirement because the local ordinance is a substantive limit on the right to withdraw units from the rental market and because the requirement is not authorized by the Act. While the question is a close one, we conclude that the Ellis Act preempts the belief requirement because the requirement creates an impermissible substantive defense in summary eviction proceedings that is not permissible under the Ellis Act.

We recognize that many cases finding preemption of local eviction ordinances involve requirements far more onerous than the belief requirement, in that they completely barred landlords from exiting the rental market in some instances—a result clearly prohibited by the Ellis Act. (E.g., *Reidy v. City and County of San Francisco, supra*, 123 Cal.App.4th at pp. 589, 593 [requirement that residential hotel owners provide replacement units or pay in-kind fee before removal of units from rental market preempted by Ellis Act]; *First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241,

1252–1253 [69 Cal.Rptr.2d 710] [requirement that demolition of residential building be approved only where demolition would not detrimentally affect housing needs clearly conflicts with Ellis Act and is "facially preempted"]; *Channing Properties, supra,* 11 Cal.App.4th at pp. 96–97 [requirement that landlords give tenants six months' notice of Ellis Act eviction preempted by Act, which contemplates a 60-day notice]; *Javidzad v. City of Santa Monica, supra,* 204 Cal.App.3d at p. 526 [requirement that landlord obtain removal permit before withdrawing controlled rental unit from housing market directly conflicts with Ellis Act].) By contrast, landlords who comply with the belief requirement are not otherwise prevented from exiting the rental market. Johnson himself acknowledges that he eventually served a new Ellis Act termination notice that complied with the requirement.[5] The relevant inquiry here, however, is whether the belief requirement conflicts with the Ellis Act. (*Channing Properties, supra,* 11 Cal.App.4th at p. 94.)

■ Section 7060.4 provides detailed guidance regarding local statutes, ordinances or regulations that may be enacted requiring property owners to give notice to public entities and tenants of the intent to exit the rental market. Section 7060.4, subdivision (c), contains the Ellis Act's provision regarding notice to tenants.[6] In *Channing Properties,* the court considered a challenge to Berkeley's requirement that landlords provide six months' notice to tenants that they intended to withdraw units from the rental market. (*Channing Properties, supra,* 11 Cal.App.4th at p. 92.) The court concluded that such a requirement conflicted with a provision in section 7060.4 that permitted a

---

[5] Johnson's June 10, 2005, notice stated that he and his co-owners were complying with the belief requirement "under protest." The notice enclosed a check in the amount of $6,750, half of the $13,500 that is due where there are more than three tenants in a unit. (S.F. Admin. Code § 37.9A, subd. (e)(3)(B).) The notice also stated that the owners did not believe that any tenant was entitled to relocation payments due to age or disability.

[6] Section 7060.4, subdivision (c), provides: "The statute, ordinance, or regulation of the public entity adopted pursuant to subdivision (a) may . . . require the owner to notify any tenant or lessee displaced pursuant to this chapter of the following: [¶] (1) That the public entity has been notified pursuant to subdivision (a). [¶] (2) That the notice to the public entity specified the name and the amount of rent paid by the tenant or lessee as an occupant of the accommodations. [¶] (3) The amount of rent the owner specified in the notice to the public entity. [¶] (4) Notice to the tenant or lessee of his or her rights under [section 7060.2, subdivision (b)(3)]. [¶] (5) Notice to the tenant or lessee of the following: [¶] (A) If the tenant or lessee is at least 62 years of age or disabled, and has lived in his or her accommodations for at least one year prior to the date of delivery to the public entity of the notice of intent to withdraw, then tenancy shall be extended to one year after date of delivery to the public entity of the notice of intent to withdraw, provided that the tenant or lessee gives written notice of his or her entitlement to the owner within 60 days of date of delivery to the public entity of the notice of intent to withdraw. [¶] (B) The extended tenancy shall be continued on the same terms and conditions as existed on date of delivery to the public entity of the notice of intent to withdraw, subject to any adjustments otherwise available under the system of control. [¶] (C) No party shall be relieved of the duty to perform any obligation under the lease or rental agreement during the extended tenancy."

landlord to remove a property from the rental market 60 days after serving a memorandum regarding the removal on the relevant public entity. (*Channing Properties, supra,* at pp. 95–96.) "By carefully spelling out certain types of notice which public entities may require, the Act clearly indicates that *only* these types are authorized and other, additional notice requirements are not permissible." (*Id.* at p. 96.) The City mistakenly characterizes this language as dicta and claims that the *Channing Properties* court found preemption because of a contradiction with an "express provision of the Ellis Act." In fact, there was no "express provision" that public entities could require no more than 60 days' notice *to tenants*; instead, the court was required to consider the provision in the statute regarding notice to tenants in conjunction with a provision regarding notice to public entities, which specified a timetable. (*Id.* at pp. 95–96.)[7]

Moreover, we do not agree with the City's claim that complying with the belief requirement "could not be easier." The belief requirement on its face requires landlords to inform their tenants whether they believe the tenants are entitled to reimbursement based on their age or disability. (S.F. Admin. Code § 37.9A, subd. (e)(3)(C).) In some instances, the landlord may not know whether his or her tenant is over 62 years of age. We do not believe the burden to state whether the tenant is over 62 should be on the landlord rather than on the tenant, who could presumably demonstrate his or her age by simply providing a copy of a driver's license or other identification.

■ The requirement that the landlord state a belief regarding a tenant's entitlement to relocation payment based on his or her disability within the meaning of section 12955.3 is particularly troubling. (S.F. Admin. Code. § 37.9A, subd. (e)(3)(C).) Section 12955.3 defines "disability" as including any physical or mental disability as defined in section 12926. Section 12926, in turn, includes an exhaustive list of potential mental and physical disabilities.[8] We agree with appellants that complying with the belief requirement could be overly burdensome where a landlord lacks access to

---

[7] The City claims that appellants' argument that notice requirements are preempted if they do not appear in the Ellis Act is inconsistent with appellants' acknowledgement that it is reasonable to inform tenants of the existence of relocation payments. But section 7060.1, subdivision (c), specifically addresses the permissibility of relocation assistance, providing that nothing in the Ellis Act "[d]iminishes or enhances any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." As we discuss below, we do not consider the belief requirement a measure that truly mitigates the adverse impacts of displacement.

[8] Section 12926, subdivision (i) provides: " 'Mental disability' includes, but is not limited to, all of the following: [¶] (1) Having any mental or psychological disorder or condition, such as mental retardation, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity. . . . [¶] . . . [¶] (2) Any other mental or psychological disorder or condition not described in paragraph (1) that requires special education or related services." Section 12926, subdivision (k) provides: " 'Physical disability'

sufficient or accurate information or where the tenant may not be forthcoming about having a disability. Conducting an investigation as to whether a tenant has a disability would be especially onerous in light of the fact it is unlawful "[f]or the owner of any housing accommodation to make or to cause to be made any written or oral inquiry concerning the . . . disability of any person seeking to . . . rent or lease any housing accommodation." (§ 12955, subd. (b).)

██ The City responds that landlords are under no affirmative duty to investigate whether tenants are entitled to relocation payments and that they are required to state their belief about such entitlements only where they possess such a belief. But the San Francisco Administrative Code does not place such a limitation on the belief requirement. Even if there was such a limitation, stating that a landlord does not have a belief regarding a tenant's entitlement to relocation payments necessarily puts the landlord's subjective state of mind at issue. As the City acknowledges, failure to comply with the belief requirement is a substantive defense in an unlawful detainer action. Appellants point to several ways that a statement under the belief requirement could complicate unlawful detainer proceedings: the tenant could contest the accuracy of the landlord's belief (or lack thereof); the tenant could challenge the landlord's determination of what constitutes a disability; the landlord's statement under the belief requirement may be binding on the owner, even if he or she mistakenly believes that his or her tenants are owed more than they actually are; or the tenant might have a claim against the landlord if the landlord mistakenly suggests the tenant has a disability. The City does not address these potential complications, other than to say that landlords may "easily avoid this eviction defense" by replacing a defective termination notice with one that complies with the belief requirement. It claims that landlords "typically" are able to comply with the belief requirement even if they do not have a belief about entitlement to payment and do not conduct an investigation, pointing to three notices served by the same owner and submitted to the rent board stating that the owner did not have information to indicate the tenants were due a payment, as examples of compliance. While it may be true the City is not aware of anyone who has claimed such termination notices violate the belief requirement, the record does not reveal whether the tenants who received the notices actually challenged the owner's belief.

---

includes, but is not limited to, all of the following: [¶] (1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following: [¶] (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine. [¶] (B) Limits a major life activity. . . . [¶] . . . [¶] (2) Any other health impairment not described in paragraph (1) . . . ."

The City argues, and the trial court agreed, that the belief requirement "is designed to ensure that *when the landlord and tenant agree* on the amount of relocation assistance to which the tenant is entitled, the tenant is no longer forced to spend her time collecting documentary proof of her right to relocation assistance. Instead, she may immediately turn to the more pressing business of finding a new place to live." (Italics added.) This statement simply ignores the fact that the landlord and tenant may not agree in all instances on the amount of relocation assistance. By placing the burden on the landlord to state his or her belief about the tenant's entitlement to assistance without first requiring the tenant to offer some showing of entitlement, the belief requirement places a prohibitive price on a landlord's right to exit the rental market. (*Javidzad v. City of Santa Monica, supra,* 204 Cal.App.3d at p. 531.)

The City defends the belief requirement as a permissible means "to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (§ 7060.1, subd. (c).) Appellants do not challenge the other provisions of the City's rent ordinance that truly mitigate the adverse impacts on displaced tenants: the requirements that landlords inform tenants of their rights under the Ellis Act and that low income tenants receive relocation assistance.[9] Rather than mitigate the adverse impacts on displaced tenants, the belief requirement impermissibly shifts the burden of demonstrating eligibility for relocation payment from the tenant, who is in the best position to make such a showing, to the landlord, who may face delays in the eviction process if he or she has a mistaken "belief" about a tenant's eligibility for payment.

Although there is no express contradiction between the City's belief requirement and the Ellis Act, we conclude that the Act impliedly preempts the local law because it creates a substantive defense in eviction proceedings not contemplated by the Act.[10] (*Yarmark, supra,* 203 Cal.App.3d at p. 164.)

---

[9] In a separate appeal, this court considers the challenge by SPOSF and other plaintiffs to the City's requirement that landlords provide relocation assistance to all tenants displaced pursuant to the Ellis Act, not just to those who are low income. (*Pieri v. City and County of San Francisco* (A110571, app. pending).)

[10] In light of our conclusion that the Ellis Act preempts the belief requirement as an impermissible substantive eviction control, we need not decide whether the belief requirement is preempted as an impermissible procedural requirement under *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001].

D. *Appropriateness of Writ of Mandate.*

■ Because we conclude that the Ellis Act preempts the belief requirement, we disagree with the trial court's conclusion that writ relief is not appropriate. The court "must" issue a writ of mandate "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) Relief by writ of mandate is appropriate to prevent a city from enforcing an ordinance that is preempted by the Ellis Act. (E.g., *Reidy v. City and County of San Francisco, supra,* 123 Cal.App.4th at p. 586; *Tom v. City and County of San Francisco, supra,* 120 Cal.App.4th at pp. 678–679; *First Presbyterian Church v. City of Berkeley, supra,* 59 Cal.App.4th at p. 1243; *Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles, supra,* 54 Cal.App.4th at p. 58.) The trial court first reasoned that "given the ease with which owners can comply with the Belief Requirement . . . , disputes between landlords and tenants about the Belief Requirement are unlikely to recur in the future, rendering the extraordinary remedy of writ relief less pressing." As we explained *ante,* we do not agree that all owners can necessarily comply with the belief requirement with "ease," or that compliance with the belief requirement "could not be easier," as the City claims. The City claims that it "appears" the only landlords who have experienced difficulty with complying with the belief requirement are those who are represented by appellants' counsel, apparently based on the orders submitted to this court by appellants' counsel from other unlawful detainer actions. We simply cannot conclude as a matter of law, however, that the only people who would ever encounter difficulties with the belief requirement are those landlords represented by appellants' counsel.

We likewise disagree that landlords have an adequate remedy at law because they may adjudicate the validity of their termination notices in individual unlawful detainer actions. To require each landlord to litigate the issue separately could lead to inconsistent rulings by different trial court judges. SPOSF includes members who have invoked the Ellis Act or plan to do so in the future, and issuing a writ of mandate prevents piecemeal litigation regarding the belief requirement. The City claims that a published appellate opinion arising from an unlawful detainer action "will *eventually* resolve the issue in a manner that will ensure future uniformity in the trial courts" but does not provide an adequate reason why such uniformity should not be accomplished now. (Italics added.) Indeed, we see none. Relief by writ of mandate is appropriate in this case.

## DISPOSITION

The judgment is reversed and the case is remanded for proceedings consistent with this opinion. Appellants shall recover their costs on appeal.

Rivera, J., and Munter, J.,[*] concurred.

---

[*]Judge of the San Francisco Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.