Filed 4/11/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SMALL PROPERTY OWNERS OF SAN FRANCISCO INSTITUTE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>     Defendants and Respondents. | A145860<br><br>(San Francisco County<br>Super. Ct. No. CPF 14-513453) |

The City and County of San Francisco adopted an ordinance that allows property owners to make changes to certain types of housing units that previously could not be enlarged, altered or reconstructed.  But the ordinance imposes waiting periods of up to 10 years before changes can be made to units where tenants are evicted under "no-fault" provisions, including tenants who are evicted in accordance with the Ellis Act, which allows property owners who seek to exit the rental business to evict residential tenants and prohibits local governments from "compel[ling] the owner of any residential real property to offer, or to continue to offer accommodations in the property for rent or lease."  (Gov. Code, § 7060, subd. (a).)  The Small Property Owners of San Francisco Institute (SPOSFI) filed a petition for writ of mandate and declaratory relief against the City and County, the Board of Supervisors (Board), the Planning Commission (Commission), and the Planning Department (Department), collectively "the City," challenging the ordinance on the grounds that the City failed to comply with the City

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B, C, and D of the Discussion section.

1

Planning Code and with CEQA, and on the grounds that the ordinance imposes a prohibitive price on property owners exercising their right to exit the rental business and therefore conflicts with and is preempted by the Ellis Act. The trial court denied the petition, and judgment was entered in favor of the City.

SPOSFI argues on appeal that the trial court erred in denying a motion to augment the record, in determining that SPOSFI failed to timely raise challenges to the ordinance under the San Francisco Planning Code and CEQA and therefore waived them, and in determining that the ordinance does not conflict with the Ellis Act. In the unpublished portion of this opinion we conclude that SPOSFI has not shown error with respect to the record or waiver. In the published portion, we conclude that the ordinance is preempted by the Ellis Act because it requires a property owner who exercises Ellis Act rights to wait 10 years before being eligible for a permit to make alterations. Therefore, we shall reverse the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Before San Francisco Ordinance No. 286-13 (Ordinance No. 286-13) was adopted in December 2013, section 181 of San Francisco's Planning Code generally prohibited the enlargement, alteration or reconstruction of "nonconforming units," which are legal residential housing units that exceed the currently-permitted density for the zoning district in which they are located.[1] As modified by Ordinance No. 286-13, Planning Code section 181, subdivision (c), now permits the enlargement, alteration or reconstruction of nonconforming residential units in zoning districts where residential use is principally permitted, as long as the changes do not extend beyond the "building envelope" as it existed on January 1, 2013. However, a waiting period of five to 10 years applies for changes to units where a tenant has been evicted under the provisions of San

_____

[1] Nonconforming units were legally constructed before current zoning districts were established, and therefore generally exist in older buildings. If a building contains more units than currently permitted by the zoning district, the units must be designated as "conforming" or "nonconforming." Building owners choose which units to designate as conforming or nonconforming.

2

Francisco Administrative Code (Administrative Code) section 37.9, subdivisions (a)(8) through (a)(14), which set forth grounds for evicting a non-faulting tenant. (S.F. Planning Code (Planning Code), § 181, subd. (c)(3).) In particular, a 10-year waiting period applies if a tenant has been evicted under Administrative Code section 37.9, subdivision (a)(13), which allows a property owner to evict tenants to remove residential units from the rental market in accordance with the Ellis Act.[2] (Gov. Code, § 7060, subd. (a) [barring statutes and regulations that compel the owner of any residential real property to offer, or continue to offer, accommodations in the property for rent].)

A.      *Initial Proposal to Allow Changes to Nonconforming Units*

In January 2013, Supervisor John Avalos introduced a proposed ordinance that would modify the Planning Code in several different respects, including by allowing the enlargement or alteration of nonconforming units in zoning districts where residential use is principally permitted. The Board transmitted the proposed ordinance to the Department for environmental review under CEQA.[3] The Department determined that the ordinance was "[n]ot a project" under CEQA Guidelines section 15060, subdivision (c)(2) (Cal. Code Regs., tit. 14, § 15060, subd. (c)(2)), and noted that individual projects proposed under the ordinance would undergo physical environmental review.

The Commission held a hearing on the proposed ordinance in July 2013. In advance of the hearing, Department staff prepared an executive summary, which raised the possibility that allowing changes to nonconforming units might have unintended consequences. Staff explained that "very often nonconforming units are among the city's most affordable housing stock, and are often subject to rent control." Allowing changes to those units "would provide increased flexibility, which could encourage the

---

[2] The Administrative Code establishes procedures for landlords to follow in withdrawing units from the rental market, requires relocation payments to tenants, and imposes restrictions on the return of withdrawn units to the rental market. (Admin. Code, § 37.9A.)

[3] The California Environmental Quality Act, Public Resources Code section 21000 et seq.

3

improvement, expansion, or production of family-sized housing," but that "[a]lternatively, the amendments could result in expansions that would increase the cost of the units, including rental units, such that they are no longer affordable." The Department could not predict the effects of changing the law, "but encourage[d] decision-makers to carefully consider these potential impacts to the city's most affordable, yet unsubsidized, form of housing."

At the Commission meeting, a memorandum from Supervisor Avalos was circulated proposing amendments to the ordinance, including two that related to nonconforming units. To preserve the affordability of nonconforming units, Supervisor Avalos proposed prohibiting alterations that would extend beyond the building envelope as it existed on January 1, 2013. To prevent owners from evicting tenants for the purpose of altering units, he proposed prohibiting alterations if a building had a "no-fault" eviction, including an Ellis Act eviction under section 37.9, subdivision (a)(13) of the Administrative Code, within the past 10 years.[4] During the July 2013 hearing, a member of Supervisor Avalos's staff discussed amending the ordinance to address concerns that allowing changes to nonconforming units could give property owners the incentive to evict tenants so the owners could alter the units.

At the close of the hearing, the Commission adopted a recommendation that the portion of the proposed ordinance concerned with allowing enlargements and alterations of nonconforming units be split from the remainder of the proposal, and continued to September 2013.[5]

---

[4] The memorandum stated, "I would like to propose an additional amendment to prevent owners from evicting tenants to . . . alter a nonconforming unit . . . . To accomplish this . . . [¶] Section 181 would be amended so that nonconforming units could not be altered 'if the building has had one or more 'no-fault' evictions, as defined in 37.9(a)(7)-(13) of the Administrative Code, with each eviction associated with a separate unit(s) within the past ten years."

[5] The remainder of the original proposal subsequently became Ordinance No. 287-13, which, among other things, amended Planning Code section 317, subdivision (e)(4) to impose five- to 10-year waiting periods on mergers of residential units if a tenant was evicted under Administrative Code sections 37.9, subdivision (a)(8) through 37.9,

4

B.    *Adoption of Ordinance No. 286-13*

About 10 days after the July 2013 hearing, Supervisor Avalos introduced a new proposed ordinance that would permit enlargement, alteration, or reconstruction of a nonconforming unit if the building is located in a zoning district where residential use is principally permitted so long as the enlargement, alteration, or reconstruction did not extend beyond the building envelope as it existed on January 1, 2013.  The Board transmitted the proposed ordinance to the Department for environmental review, and the Department determined that the ordinance was not a project for purposes of CEQA.

The Commission held a hearing on the new proposed ordinance in September 2013.  In advance of the hearing, Department staff prepared an executive summary stating that the limitation of changes to the existing building envelope reduced the likelihood that expanding nonconforming units would make them less affordable.  At the hearing, Supervisor Avalos's aide, Jeremy Pollock, informed the Commission that Supervisor Avalos's office and the city attorney were "working on language that would not allow for alterations in units that had had an eviction, a no fault eviction within the last 10 years."  Pollock explained, "[W]e're basically looking to model that [language] on other places in the Planning Code that have restrictions on no-fault eviction, such as the recently passed condo conversion ordinance and also the garage ordinance that dealt with garages in Chinatown, Telegraph Hill and North Beach."  The Commission asked for public comment; none was offered.

During discussion of the proposed ordinance by the Commission, Department staff member Sophie Hayward noted that Supervisor Avalos "has been very clear to date as to the changes that he is hoping to make to this ordinance, which relates to language regarding no-fault eviction.  If any other substantive change were made it would be automatically referred back to the Planning Commission."  Commissioner Antonini, the

subdivision (a)(14).  Our colleagues in Division Three affirmed a trial court ruling that the amended Planning Code section was preempted by the Ellis Act in *San Francisco Apartment Association v. City and County of San Francisco* (2016) 3 Cal.App.5th 463 (*SFAA*), which we discuss below.

5

only member of the Commission to vote against the ordinance, cited the proposed amendment regarding no-fault evictions as a reason for his opposition: "It reminds me of the garage door. We went through a discussion on a property . . . and the present owners had nothing to do with the evictions that happened many years before, . . . and they just wanted to provide garages for their own use. And [a supervisor] introduced this legislation to link them to something that happened well before and they had no control over. [¶] Ten years is a long time and you could have ownership changes. So just on the basis of that being part of this legislation, I think parts of this have some good uses, but I think that in particular I don't like." The Commission voted to approve the proposed ordinance by a vote of 6 to 1.

The Board's Land Use and Economic Development Committee (Land Use Committee or Committee) considered the ordinance and solicited public comment at a meeting in November 2013. At the meeting, Supervisor Avalos's aide Pollock asked the Committee to adopt the amendment that alterations not be allowed for 10 years where no-fault evictions had occurred, and to continue the item for two weeks, anticipating that the language of the amendment would be available before the next hearing. Pollock explained that the purpose of the amendment was to avoid creating an incentive for owners to evict tenants, renovate the units, and then rent or sell them at a higher rate. The Committee asked for public comment; none was forthcoming; and the Committee then voted to accept the amendment and continue the item as amended until the next Committee meeting.

The proposed ordinance was discussed again at a December 9, 2013 meeting of the Committee. As reflected in the meeting notice, the ordinance to be discussed did not permit owners to make changes if tenants had been evicted under certain Rent Ordinance provisions. Supervisor Avalos spoke about the ordinance at some length, and explained that the ordinance included "safeguards to ensure that allowing alterations to [nonconforming] units won't have unintended consequences that reduce their affordability or encourage displacement of tenants." During the public comment period, two representatives of SPOSFI spoke. President Nuney Rickan expressed concerns that

6

the ordinance would reduce the number of affordable rentals. Peter Rice expressed concerns that the ordinance would make it more difficult for middle-income people to find housing to purchase, and said he would "leave to the lawyers to interpret whether or not you can tinker with the Ellis Act the way that you're doing." Neither Rickan nor Rice raised any issues concerning CEQA or the requirements of the San Francisco Charter or Planning Code. At the end of the hearing, the Committee voted to refer the ordinance to the Board as a Committee report for the Board's meeting the next day, December 10.

At the December 10 Board meeting, the proposed ordinance passed unanimously on the first reading. On December 16, the Board received a letter from SPOSFI, dated December 13, 2013, objecting to the ordinance. For the first time, SPOSFI claimed that in passing the ordinance the Board would violate CEQA and the San Francisco Charter. SPOSFI also contended the ordinance was facially defective and preempted under the Ellis Act.

The Board passed the ordinance unanimously on second reading on December 17, 2013. On December 26, Mayor Lee signed the ordinance, numbered 286-13.

C.    *Trial Court Proceedings*

SPOSFI filed a petition for writ of mandate and complaint for declaratory relief. The trial court heard argument, and subsequently denied the petition in its entirety. Judgment was entered for the City, and this appeal followed.[6]

## DISCUSSION

A.    *Standard of Review*

"In reviewing a judgment on a petition for writ of mandate, '[w]e review the trial court's findings of fact for substantial evidence and review its legal conclusions, including its interpretation of statutory provisions, under a de novo standard of review. [Citations.]' " (*Ashlan Park Center LLC v. Crow* (2015) 233 Cal.App.4th 1274, 1278,

---

[6] We granted appellant's unopposed request that we take judicial notice of a senate committee's bill analysis of Senate Bill No. 948 (1999-2000 Reg. Sess.), which discusses amendments made to the Ellis Act.

quoting *First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218, 225.) Whether state law preempts a local ordinance is a question of law subject to de novo review. (*Johnson v. City and County of San Francisco* (2006) 137 Cal.App.4th 7, 12 (*Johnson*).)

B.      *Motion to Augment the Administrative Record*

In the course of the trial court proceedings, SPOSFI moved to augment the administrative record with four documents it received from the Department in response to a "Sunshine Request." The trial court granted the motion as to one of the four, but denied it as to the other three, which were unredacted versions of documents that existed in the record in redacted form. The trial court found that the unredacted documents included information protected by the attorney-client privilege, and that the privilege had not been waived. SPOSFI argues that the trial court's ruling on the unredacted documents was error because the redacted information was not privileged and, even if it was, the privilege had been waived by the Department's production of the documents in response to SPOSFI's request. Yet SPOSFI says nothing to indicate how the exclusion of the unredacted documents prejudiced its case.

In reviewing a trial court's ruling on a motion relating to the administrative record we review the trial court's findings of fact for substantial evidence and its conclusions of law de novo. (See *San Francisco Tomorrow v. City and County of San Francisco* (2014) 229 Cal.App.4th 498, 531.) We presume the trial court's order is correct; it is the appellant's burden to demonstrate not only that the exclusion of the material from the administrative record was error, but also that appellant was prejudiced by the error. (*Id.* at p. 534; *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308-310.) Because SPOSFI nowhere argues that it was prejudiced by the exclusion of the unredacted documents from the record, we do not further consider this claim of error.

C.      *Planning Code Challenge*

SPOSFI argues that the proposed ordinance is void because the Board took final action on it without complying with Planning Code section 302, subdivision (d), and that, contrary to the trial court ruling, SPOSFI did not waive its Planning Code challenge by

8

failing to raise it during the administrative process. We agree with the trial court that SPOSFI waived this challenge.

      1.    *Requirement of Review by the Commission*

The San Francisco Charter requires that an ordinance proposed by the Board concerning zoning, like the ordinance at issue here, which was proposed by Supervisor Avalos, must be reviewed by the Commission. (S.F. Charter, § 4.105.) After the Commission has reviewed the ordinance, the Board may modify it, but may only take final action on a "material modification" if it has been approved or disapproved by the Commission. (Planning Code, § 302, subd. (d).[7])

The Commission approved the proposed ordinance, including the substance of the amendment that imposed a 10-year waiting period on modifications to properties where a no-fault eviction has occurred, at a meeting in September 2013, well before the Board's Land Use Committee discussed the ordinance at its November and December meetings, which preceded the Board's adoption of it in December. But the record does not show that the Commission ever reviewed the actual language on which the Board voted, specifically, language incorporating the 10-year waiting period adopted at the November Committee meeting and approved as to form by the City Attorney. Therefore, according to SPOSFI, Planning Code section 302, subdivision (d) was violated, the City acted beyond its authority, and the ordinance is void. As we explain below, we need not reach

---

[7] Section 302, subdivision (d) of the Planning Code provides: "In acting upon any proposed amendment to the text of the [Planning] Code, the Board of Supervisors may modify said amendment but shall not take final action upon any material modification that has not been approved or disapproved by the Planning Commission. Should the Board adopt a motion proposing to modify the amendment while it is before said Board, said amendment and the motion proposing modification shall be referred back to the Planning Commission for its consideration. In all such cases of referral back, the amendment and the proposed modification shall be heard by the Planning Commission according to the requirements for a new proposal, except that newspaper notice . . . need be given only 10 days prior to the date of the hearing. The motion proposing modification shall refer to, and incorporate by reference, a proposed amendment approved by the City Attorney as to form."

9

the merits of this issue because of SPOSFI's failure to raise it during the administrative process.

2.     *Exhaustion Requirement*

In an action that challenges the adoption of a zoning ordinance, the issues are limited to those raised before close of the public hearing on the legislation, unless the court finds that a person exercising reasonable diligence could not have raised the issue at the hearing, or the body conducting the hearing prevented the issue from being raised. (Gov. Code, § 65009, subd. (b)(1); see *Building Industry Assn. of Central California v. County of Stanislaus* (2010) 190 Cal.App.4th 582, 596 [Gov. Code, § 65009, subd. (b)(1) applies to legislative and adjudicative acts].)

Here, the public notices for the November and December meetings of the Board's Land Use Committee at which the proposed ordinance was discussed stated that the Board would not hold second hearings on measures that have been heard in committee. The notices also stated that subsequent legal challenges to the ordinance would be subject to the exhaustion requirements of Government Code section 65009.[8] Thus SPOSFI had notice that Government Code section 65009 would apply. The notice for the December 9, 2013 meeting was clear that the Commission had recommended approval of the ordinance in at a meeting in September, that the Committee had subsequently amended the ordinance at a meeting in November, and that the Committee's Chair intended to entertain a motion to refer the ordinance to the full Board for consideration at its meeting on December 10. SPOSFI representatives participated in the December 9 Committee meeting, and they could have objected then that because the ordinance had been amended in November, after the Commission recommended approval, the ordinance should be

---

[8] The notices, each of which listed the ordinance as part of the regular agenda, including the following language at the end of that part of the agenda: "NOTE: Pursuant to Government Code Section 65009, the following notice is hereby given: if you challenge, in court, the general plan amendments or planning code and zoning map amendments described above, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the Board of Supervisors at, or prior to, the public hearing."

referred back to the Commission for further review before being sent to the full Board for action. But they made no such objection. Accordingly, SPOSFI is barred from raising its Planning Code challenge in court.

Conceding that it did not raise the issue of compliance with the Planning Code during the administrative process, SPOSFI argues that it was not required to do so for two reasons; first, the challenge is one that could not be raised until after Board approval of the ordinance, which was after the close of the opportunities for public comment; second, the City did not give proper notice, thereby effectively preventing SPOSFI from raising its challenge. SPOSFI also argues that it should be exempt from the requirements of Government Code section 65009, subdivision (b) "because of the nature of the challenges."[9] We are not persuaded.

SPOSFI's first argument rests on its observation that the City did not violate Planning Code section 302, subdivision (d) until it took final action without having referred the matter back to the Commission, and that therefore a person exercising reasonable diligence cannot raise the failure to comply with that provision until after final action is taken, which happens only after public comment is closed. This argument elevates form over substance. The problem with the ordinance, from SPOSFI's perspective, is that it should have been referred back to the Commission after it was amended at the Committee's November meeting. A review of the notices of the November and December 9, 2013 Committee meetings, and the proceedings on December 9 (at which SPOSFI was present) make it clear that the language of the ordinance was amended to impose a 10-year waiting period after the Commission had approved it, and that the Committee intended to refer the ordinance to the full Board for action at its meeting on December 10. This constitutes substantial evidence to support

---

[9] In its reply brief on appeal, SPOSFI argues that the City prevented it from raising Planning Code compliance before the Commission and before the Board. To the extent that argument differs from the arguments in SPOSFI's opening brief, we disregard it as an argument raised for the first time on reply. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1296.

11

the trial court's implied finding that a person exercising reasonable diligence could have objected at the December 9 Committee meeting that the ordinance should be referred back to the Commission.

To the extent SPOSFI's second argument is different from the first, SPOSFI argues that the 10-year waiting period was not mentioned in the notices of the July and September Commission meetings or the November Land Use Committee meeting, and therefore the public had no opportunity to comment on it until the December 9 Committee meeting. SPOSFI concedes, as it must, that the public had the opportunity to comment at the December 9 meeting, where two of its representatives spoke. SPOSFI cites no authority to indicate that anything more was needed.

Finally, SPOSFI argues that it should be exempt from the exhaustion requirement "because of the nature of the challenges." SPOSFI relies on *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, which in discussing exceptions to the exhaustion of remedies doctrine, notes that even where a lawsuit raises important questions of constitutional law or public policy, "exhaustion is not excused merely 'because the ultimate legal issues . . . are better suited for determination by the courts.' " (*Id.* at p. 276.) SPOSFI does not offer any authority suggesting that the challenges it raises here justify a judicial exception to the exhaustion doctrine codified by the Legislature in Government Code section 65009, and we decline to make an exception here.

We conclude that SPOSFI cannot raise its Planning Code challenge in court because it failed to timely raise it at the administrative level. And in any event, to the extent the substance of SPOSFI's challenge is that the Commission lacked the opportunity to consider the ordinance as amended, the challenge must fail because the record is clear that the Commission was fully aware of the substance of Supervisor Avalos's proposed amendment as early as its July meeting, when a memorandum was circulated discussing the proposed amendment in some detail, and because members of the Commission discussed the proposed amendment and its implications at their meeting in September.

12

D.   *CEQA Challenge*

SPOSFI argues that the City erred in determining that Ordinance No. 286-13 was not a "project" for purposes of CEQA, and that, contrary to court ruling, SPOSFI did not waive its CEQA challenge by failing to timely raise it during the administrative process. We agree with the trial court that SPOSFI waived its challenge.

1.   *Applicable Law*

CEQA and its implementing regulations "establish a three-step process designed to assure that public agencies consider the environmental impact of their actions and decisions." (*Save the Plastic Bag Coalition v. City and County of San Francisco* (2013) 222 Cal.App.4th 863, 872.)  The first step requires the public agency to determine whether it is undertaking, supporting or approving a "project," that is, "an activity which may cause either a direct or indirect physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." (Pub. Resources Code, § 21065; see *Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 286 (*Tomlinson*).) As a general matter, a court action that alleges noncompliance with CEQA may not be brought unless the issue has been timely raised at the administrative level.  (Pub. Resources Code, § 21177; see *Tomlinson*, *supra*, 54 Cal.4th at p. 285.)

2.   *Analysis*

Here, the Department reviewed the proposed provisions regarding nonconforming units twice—once in advance of the July 2013 Commission meeting at which the broader proposed ordinance was discussed, and once more in advance of the September 2013 Commission meeting at which there was discussion of the narrower ordinance that was eventually adopted.  Each time, the Department determined that the proposal was not subject to CEQA.  At each of the meetings, the Commission adopted a resolution regarding the proposed ordinance, stating that the proposal had been determined to be exempt from environmental review under CEQA.  After the July and September Commission meetings, two further public hearings on the proposed ordinance were held before the Land Use Committee.  At the last of these, on December 9, 2013, two representatives of SPOSFI appeared and spoke, but made no mention of CEQA.  SPOSFI

could have argued then that the Department's CEQA determination was incorrect, or that further CEQA review was required in light of the Committee's adoption in November of the amendment preventing alterations for 10 years in buildings where tenants had been evicted under no-fault provisions. Yet SPOSFI did not make these objections until its December 13, 2013 letter to the Board, which was dated after public comment on the ordinance was closed on December 9, and after the Board passed the proposed ordinance on December 10. In these circumstances, SPOSFI failed to timely raise its CEQA objections to the City, and therefore cannot raise them in court. (Pub. Resources Code, § 21177.)

SPOSFI argues that the exhaustion of remedies doctrine does not apply, relying on Public Resources Code section 21177, subdivision (e), which provides that administrative remedies need not be exhausted if "there was no public hearing or other opportunity for members of the public to raise . . . objections orally or in writing prior to the approval of the project, or if the public agency failed to give the notice required by law." The argument lacks merit. The record is clear that the City gave notice of the Department's view that CEQA did not apply to the proposed ordinance in advance of the December 9 Committee hearing at which SPOSFI representatives spoke, objecting to the imposition of a 10-year waiting period on properties where no-fault evictions had taken place. SPOSFI's objections to the proposed ordinance at the December 9 hearing effect a waiver of claims that it lacked the opportunity to raise its CEQA objections and that notice was defective. (*Tomlinson*, *supra*, 54 Cal.4th at p. 290; *Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 855.)

SPOSFI asserts that any failure to timely raise its CEQA objections is excused because the objections "involve important questions of public policy." The assertion, supported by nothing more than two unexplained citations to cases, does not constitute adequate appellate argument and we decline to address it for that reason. (See *Nelson v. Avondale HOA* (2009) 172 Cal.App.4th 857, 862 [declining to consider contention unsupported by discussion of legal authorities]; *Tilbury Constructors, Inc. v. State Comp.*

14

*Ins. Fund* (2006) 137 Cal.App.4th 466, 482-483 [rejecting contention presented without legal analysis]).

In sum, we conclude that Appellant waived its CEQA objections by waiting to make them until after the close of public comment on the ordinance.

E.     *Ellis Act Challenge*

SPOSFI argues that on its face the ordinance is preempted by the Ellis Act, on the grounds that that by imposing a 10-year waiting period on altering nonconforming units where a tenant was evicted by a landlord exercising Ellis Act rights, the ordinance penalizes the exercise of those rights. We agree.

1.     *Applicable Law*

The Ellis Act prohibits local governments from "compel[ing] the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (Gov. Code, § 7060, subd. (a).[10])  "The Legislature enacted the Ellis Act following the California Supreme Court's opinion in *Nash v. City of Santa Monica* (1985) 37 Cal.3d 97, upholding a city ordinance that required owners of residential real property to obtain a permit before they could remove property from the rental market.  (§ 7060.7.)  '[T]he Act was intended to overrule the *Nash* decision so as to permit landlords the unfettered right to remove all residential rental units from the market, consistent, of course, with guidelines as set forth in the Act and adopted by local governments in accordance thereto.'  (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153 (*Yarmark*); § 7060.)  The Act does not diminish or enhance a local government's ability 'to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations.'  (§ 7060.1, subd. (c).)  It likewise does not interfere with a local government's ability to regulate land use or override 'procedural protections designed to prevent abuse of the right to evict tenants.'  (§ 7060.7, subd. (c).)"  (*Johnson*, *supra*, 137 Cal.App.4th at p. 12.)  However, "it 'completely occupies the field of substantive eviction controls over landlords who wish to

_____

[10] Subsequent undesignated statutory references are to the Government Code.

15

withdraw' all units from the residential rental market." (*Id.* at p. 14, quoting *Yarmark*, *supra*, 203 Cal.App.3d at p. 167.)

Local legislation that conflicts with state law is preempted by state law and is void. (*Johnson*, *supra*, 137 Cal.App.4th at p. 13.) " 'A conflict exists when the local legislation contradicts state law. Local legislation contradicts state law when it is inimical to it.' " (*Id.*, quoting *Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th 580, 587 (*Reidy*).) In the context of a preemption analysis, an explicit contradiction between an ordinance and a state statute occurs "where the language of the ordinance directly contradicts the operative language of the statute, e.g., by penalizing conduct which the state law expressly authorizes . . . ." (*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 396-397.)

2.      *Analysis*

SPOSFI argues that the ordinance is preempted on its face because, by imposing a 10-year waiting period on the modification of a non-conforming unit where a tenant was evicted under the Ellis Act, it penalizes a property owner's exercise of Ellis Act rights. The City raises three arguments in response: First, SPOSFI cannot state a facial challenge to the ordinance; second, the imposition of the 10-year waiting period falls within the City's authority to regulate land use and mitigate impacts on displaced tenants; third, the ordinance does not conflict with the Ellis Act because it does not impose a prohibitive price on exiting the rental business.

We conclude that SPOSFI has the better argument. Our analysis draws heavily on the analysis by our colleagues in Division Three in *SFAA*, *supra*, 3 Cal.App.5th 463, which affirmed a trial court ruling that the Ellis Act preempts a Planning Code provision that imposes a 10-year waiting period on merging units in properties where tenants have been evicted under no-fault provisions, including under the Ellis Act. (*SFAA*, *supra*, 3 Cal.App.5th at p. 487). The analysis of the preemption issue required the Court of Appeal to focus broadly on whether the Planning Code provision " ' "duplicates, contradicts, or enters an area fully occupied by general law . . . ." ' " (*Id.* at p. 479, quoting *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.) Since

16

the Ellis Act " 'completely occupies the field of substantive eviction controls over landlords' desiring to exit the residential market' " (*ibid.*, quoting *Johnson*, *supra*, 137 Cal.App.4th at p. 14), and the ordinance amounted to a substantive limit on that right, the ordinance was preempted. In *SFAA* the ordinance penalized property owners who left the residential market, including at least owners leaving the market for the purpose of merging a withdrawn unit with another unit, by imposing a mandatory 10-year waiting period on the property owners before they could successfully apply for the necessary permit to merge the units. (*Ibid.*) This, the Court of Appeal concluded, was "a mandatory restriction on the rights of property owners that far exceeds the scope of permissible local governance delineated by the Ellis Act." (*Ibid.*)

The Court of Appeal in *SFAA* further concluded that the ordinance at issue there was facially void, rejecting the City's argument that a facial challenge was inappropriate because there were conceivable circumstances under which the challenged ordinance and the Ellis Act could operate consistently, and that therefore the plaintiffs had not established that the ordinance " 'inevitably pose[s] a present total and fatal conflict' " with the Ellis Act. (*SFAA*, *supra*, 3 Cal.App.5th at p. 486-487, quoting *Association of California Ins. Companies v. Poizner* (2009) 180 Cal.App.4th 1029, 1054.) The *SFAA* court explained that in determining whether a challenged ordinance presents a total and fatal conflict with state law, and therefore is facially void, the court considers only the text of the ordinance, not its application to particular circumstances, and focuses on the interplay of the state and local laws. (*SFAA* at p. 487.) Doing so in *SFAA*, the court wrote, "it is clear that in every case where a San Francisco property owner exercises his or her right under the Ellis Act in order to withdraw a [nonconforming] rental unit from the residential market in order to merge the unit with another, the property owner is met head-on with a locally-imposed legal barrier—to wit, the 10-year" waiting period. (*Ibid.*) In that light, the legality of the challenged ordinance "hinge[d] on 'only the text of the measure itself.' " (*Ibid.*, citing *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) Accordingly, the facial challenge was appropriate. (*Ibid.*)

17

The Court of Appeal in *SFAA* recognized that under the Ellis Act the City " 'retains its traditional police power to regulate the subsequent use of the property after the property's removal from the rental housing market,' " including " 'the particulars of the demolition and the redevelopment of the property after it is withdrawn from the rental market.' " (*SFAA, supra,* 3 Cal.App.5th at p. 480, quoting *Reidy*, *supra*, 123 Cal.App.4th at p. 588.)  The 10-year waiting period, however, was "more akin to a substantive requirement triggered upon a landlord's notice of intent to remove a rental unit from the rental housing market than to local regulation of 'the particulars of the demolition and the redevelopment of the property after it is withdrawn . . . .' " (*Ibid.*, quoting *Reidy*, *supra*, 123 Cal.App.4th at p. 588.)  The ordinance in *SFAA* "rather than regulating the particulars of a landlord's proposed merger . . . of a residential unit, . . . *prohibits* a landlord withdrawing a residential unit from the rental market from merging the unit with another unit for 10 years.  In doing so, [the ordinance] imposes a penalty on the very class entitled to protection under the Ellis Act—to wit, landowners seeking to exit the residential rental business.  As such, [the ordinance] is indeed invalid." (*SFAA* at p. 480.)

It is a straightforward matter to apply *SFAA* to the facts here.  By imposing a 10-year waiting period on alterations to non-conforming units where property owners have exercised their Ellis Act rights, the ordinance penalizes property owners who leave the rental market.  The ordinance does not regulate the particulars of the remodeling of a nonconforming unit, but rather prohibits any such changes for a period of 10 years after the property owner exits the rental business.  By imposing such a prohibition on property owners who have left the rental market, the ordinance challenged here improperly enters the field of substantive eviction controls over such property owners.  (See *SFAA*, *supra*, 3 Cal.App.5th at p. 479.)

Contrary to the City's argument, SPOSFI has appropriately stated a facial challenge to the ordinance.  Under the ordinance here, in every case where a property owner exercises the Ellis Act right to withdraw a nonconforming rental unit from the residential market, the property owner is met with a locally-imposed legal barrier:  a 10-year waiting period before the unit can be remodeled.  In this respect, the ordinance

impedes property owners from exercising their Ellis Act rights to withdraw residential units from the rental market. It does not matter that the waiting period occurs after the Ellis Act eviction, rather than before it. (See *SFAA*, *supra*, 3 Cal.App.5th at p. 487.)

Nor are we persuaded that the 10-year waiting period is nothing more than a provision that governs "the demolition and redevelopment of residential property." (§ 7060.7, subd. (b).) As in *SFAA*, the 10-year waiting period here is "more akin to a substantive requirement triggered upon a landlord's notice of intent to remove a rental unit from the rental housing market than to local regulation of 'the particulars of the demolition and the redevelopment of the property after it is withdrawn.' " (*SFAA*, *supra*, 3 Cal.App.5th at p. 480, quoting *Reidy*, *supra*, 123 Cal.App.4th at p. 588.) Rather than regulating the particulars of a property owner's proposed alteration of a nonconforming unit, the ordinance here prohibits a property owner who has withdrawn a nonconforming unit from the market from altering it for 10 years, and in doing so penalizes property owners who are protected by the Ellis Act.

Nor does the waiting period "mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (§ 7060.1, subd. (c).) The City argues that if property owners were permitted to withdraw nonconforming rental units from the market and remodel them, the right of displaced tenants to reoccupy the vacated units would be vitiated, because if the units were rerented, they would "likely lose the affordability that is the hallmark of these nonconforming units." The City claims that the ordinance prevents that from happening by "prohibiting substantial alterations only for the period prescribed in the Ellis Act." This argument is speculative and ignores the substantial protections provided by the Ellis Act and the Administrative Code to tenants who are evicted under the Ellis Act.[11] (§ 7060.2; Admin. Code, § 37.9A.)

---

[11] These rights and remedies include the following: Ellis Act evictions require at least 120 days' notice; seniors and disabled individuals who have lived in their units for one year or more require at least one year's notice. (Admin. Code, § 37.9A, subd. (f)(4).) A tenant evicted under the Ellis Act is entitled to relocation money, half of which must be paid at the time the eviction notice is served. (*Id.*, § 37.9A, subd. (e)(3).) If a unit removed from the rental market under the Ellis Act is returned to the rental market within

19

Furthermore, it is far from clear how a displaced tenant is helped by a unit remaining unimproved and off the rental market.

The City argues that even if the ordinance penalizes the exercise of Ellis Act rights it does not impose a "prohibitive price" on exiting the rental business. In the context of Ellis Act jurisprudence, a "prohibitive price" on a property owner's exercise of Ellis Act rights is an "inevitable and undue burden," (*SFAA*, *supra*, 3 Cal.App.5th at p. 482, citing cases including *Johnson*, *supra*, 137 Cal.App.4th at p. 14 ["Placing requirements on landlords that are inconsistent with their right to go out of business under the Ellis Act 'imposes a prohibitive price on the exercise of the right under the Act' "].) Such burdens include significant restrictions on the landlord's use of the property when those restrictions are tied to the exercise of Ellis Act rights. In *Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886, our colleagues in Division Four discussed the development of this aspect of law: "The court in *Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524, 526, considered a city law that denied a removal permit to landlords who could make a fair return on their property unless the units were uninhabitable or unless the landlord intended to develop new rent controlled units. Noting that the denial of a removal permit precluded the redevelopment of the property, the court concluded the measure imposed a prohibitive price on the exercise of the rights under the Ellis Act. (*Id.* at p. 531.) Other cases have concluded local measures violated the Ellis Act where they denied a permit for demolition of a residential building unless it would not be detrimental to housing needs and it would either remove a hazardous structure or would be necessary to permit construction of the same number of housing units (*First Presbyterian Church v. City of Berkeley* (1997) 59 Cal.App.4th 1241, 1252–

---

two years, the displaced tenant may sue for actual and exemplary damages. (*Id.*, § 37.9A, subd. (d)(1).) In addition, the City can bring a civil proceeding against the owner for exemplary damages for displacement of tenants. (*Id.*, § 37.9A, subd. (d)(2).) If the unit is returned to the rental market within five years, it must be re-rented at the old rate. (*Id.*, § 37.9A, subd. (b).) If the unit is returned to the rental market within 10 years, the evicted tenant has a right of first refusal. (*Id.*, § 37.9A, subd. (c).)

1253); denied the right to demolish buildings unless the owners agreed to restrict the use of the land for themselves and their successors for 10 years (*Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53, 64,); and denied the right to eliminate or demolish residential hotel units unless the owner either provided replacement units or paid the city 80 percent of the cost of replacement housing (*Reidy*, *supra*, 123 Cal.App.4th at pp. 589, 593). Thus, in each of these cases, the local law on its face imposed a significant restriction on the landlord's use of the property." (*Pieri*, *supra*, 137 Cal.App.4th at pp. 893-894.)

Here, an inevitable burden of exercising Ellis Act rights is a prohibition against altering a non-conforming unit for 10 years. The City argues that the burden is reasonable because it "merely" requires property owners to observe the 10-year reoccupancy period recognized in the Ellis Act. (See § 7060.2, subd. (c) [authorizing public entities to require property owners who offer a unit for rent within 10 years of its removal from the rental market to offer the unit to the displaced tenant].) But the ordinance does more than that. It does not simply require that a unit that is returned to the market be offered to the displaced tenant: it imposes a waiting period on the alteration of nonconforming units where an Ellis Act eviction has taken place, no matter the use to which the unit is put. Like the 10-year waiting period on mergers analyzed in *SFAA,* the ordinance here "imposes a mandatory restriction on the rights of property owners that far exceeds the scope of permissible local governance delineated by the Ellis Act." (*SFAA*, *supra*, 3 Cal.App.5th at p. 479.)

We conclude that because it imposes a 10-year waiting period for alterations of properties that have been withdrawn from rental use under the Ellis Act, Planning Code section 181, subdivision (c)(3) conflicts with, and is preempted by, the Ellis Act.

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to the trial court to enter an order enjoining the City from enforcing Planning Code section 181, subdivision (c)(3) as to property owners undertaking no-fault evictions under the Ellis Act. Appellant shall recover its costs on appeal.

21

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Richman, J.

A145860, *Small Property Owners of San Francisco Institute v. City and County of San Francisco*

22

Trial Court:  Superior Court of San Francisco County

Trial Judge:  Hon. Teri L. Jackson


Attorneys for Appellant                    Zacks & Freedman P.C.
                                           Andrew M. Zacks
                                           James B. Kraus
                                           Ryan J. Patterson


Attorneys for Respondents                  Dennis J. Herrera
                                           City Attorney
                    .                      Kristen A. Jensen
                                           Deputy City Attorney
                                           Brian F. Crossman
                                           Deputy City Attorney


A145860, *Small Property Owners of San Francisco Institute v. City and County of San Francisco, et al.*