[Civ. No. 33426. Second Dist., Div. One. June 5, 1969.]

ELIZABETH MARY LAMEY, Plaintiff and Respondent, v. ANTONIO MASCIOTRA, Defendant and Appellant.

Hahn, Cazier, Thornton & Hoegh, Ronald E. Swearinger and Dennis B. Haase for Defendant and Appellant.

Gabler, High & Clark and Jess F. High for Plaintiff and Respondent.

FOURT, Acting P. J.—Antonio Masciotra appeals from a judgment for damages for forcible entry and detainer awarded by the trial court in favor of plaintiff Elizabeth Mary Lamey against Antonio Masciotra, Rose L. Diyorio and Pasquellina Raessler, both individually and as co-trustees of the estate of Michele Masciotra, deceased.

Appellant's sole contention, that the evidence was insufficient to support the trial court's determination that the lessors unlawfully entered and retained possession of the premises, is without merit.

Masciotra, Diyorio and Raessler, both individually and as co-trustees of the estate of Michele Masciotra, deceased, own and manage certain real properties including restaurant premises in a building situated at 14445 Ventura Boulevard in Sherman Oaks, California. On or about June 21, 1966, Elizabeth Lamey, formerly a teacher and writer of text books, entered into a two-year lease of the restaurant premises. Antonio Masciotra handled the transaction and negotiations, apparently acting on behalf of all of the property owners. Mrs. Lamey told Masciotra that she would remodel and

redecorate the premises which she intended to operate as a Mexican specialty restaurant and bar with mariachi entertainment. Masciotra agreed to pay for kitchen and bar remodeling and repair. The lease provided a minimum rental of $1,000 per month payable in advance on the first day of each month with additional percentage rentals on food and beverage sales to be calculated according to a formula provided by the lease. The lease further provided that the premises should not be sublet without the lessor's prior written consent and that in the event the lessee should be ten days in arrears in rental payments the lessors should have the right to reenter and take possession without written notice.

Mrs. Lamey paid the first month's rent and a $2,000 security deposit and went into possession. On or about July 22, 1966, the restaurant opened for business. By that time Mrs. Lamey had made a considerable investment in remodeling and furnishing the restaurant, accumulating the necessary inventory of food and beverages, obtaining a liquor license, and importing mariachi musicians from Guadalajara, Mexico, to provide entertainment. However, the restaurant was not immediately profitable, financial difficulties arose, and Mrs. Lamey was slow in paying certain subcontractors for work done on the premises and fell behind in her rental payments. D. K. Blanton of the Bank of America, which acted as agent for appellants for the collection of rents, on September 21 and again on October 10, 1966, sent to Mrs. Lamey registered letters relating to late rental payments. The October 10th letter specifically notified her that her tardy rental payments and her failure to pay the percentage rentals called for by the lease constituted defaults thereunder, and that if all rents then due and payable were not received before October 14th the lessor would take possession of the property without further notice. Mrs. Lamey, who believed she was entitled to certain offsets from Masciotra against her lease rental payments, consulted the Bank of America which told her that it only followed Masciotra's directions and had no authority to adjust amounts. Masciotra refused to discuss the matter with her.

Finally, on account of her mounting financial problems, Mrs. Lamey sought a purchaser for the restaurant business. Sometime in mid-October she located Mr. Chisholm, an experienced restaurateur, who made her an offer to purchase the business and gave her a check as a deposit thereon. On or about October 20 she took inventory. On the morning of Friday,

October 21, she visited Masciotra to notify him that she had a purchaser and to obtain his consent to a lease assignment. Masciotra refused to discuss the matter, telling her that pursuant to his lawyer's advice he was going to lock her out for failure to make her rental payments. She followed Masciotra to the restaurant premises where she was met by a locksmith. Despite Mrs. Lamey's protests and her reiteration of the fact that she had a sale of the business pending, Masciotra refused to discuss the matter further, repeated that he was locking her out of the premises pursuant to legal advice and directed the locksmith to change the locks.

On the day that Masciotra had the locks changed on the demised premises, Elizabeth Lamey had the restaurant fully stocked with food and beverages sufficient to last approximately ten days. After the locks had been changed, the bartender at Masciotra's request removed the restaurant's liquor supply. It was, of course, impossible to open the restaurant for business; the chef was locked out when he reported for work and he agreed to stay and notify the purveyors as they arrived to make deliveries that the place was closed. The restaurant furnishings were subsequently removed to a warehouse for safekeeping. The lessors retained possession of the premises, the furnishings, the supplies, and the personal property belonging to Mrs. Lamey (except for a few items returned at her specific request) until the time of trial.

Appellant contends, in substance, that the evidence was insufficient to sustain the trial court's finding that "on or about October 21st, 1966, said defendants by and through their agent, Antonio Masciotra, made an unlawful entry into said premises and unlawfully retained possession thereafter and turned the plaintiff out of possession." He bases this contention on the fact that Mrs. Lamey received the registered letter of October 10, 1966, declaring notice of the lessors' intentions to proceed according to the express terms of their lease to use self-help to regain possession.

█ Under California statutory law a tenant is entitled to a three-day notice to pay rent or quit which may be enforced by summary legal proceedings (Code Civ. Proc., § 1161) but this notice is valid and enforceable only if 'the lessor strictly complies with the specifically described notice conditions. (Code Civ. Proc., § 1162.) Unless the tenant cannot be found at the premises, the lessor must introduce evidence that the notice was personally served on the lessee. (*Jordan* v. *Talbot*, 55 Cal.2d 597, 608 [12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d

161].) ██ No personal service was made upon Mrs. Lamey, nor is there evidence that any notice was posted on the restaurant premises. The only evidence of notice is the letter of October 10 which Mrs. Lamey reasonably construed not as a statutory notice to quit or an unconditional demand for surrender of the premises but as a reminder that she should promptly resolve and adjust her differences with her lessor. (*Horton-Howard* v. *Payton,* 44 Cal.App. 108 [186 P. 167].) ██ A landlord's summary reentry on leased premises for nonpayment of rent is not warranted, even though a clause expressly authorizing reentry appears in the lease unless the statutory three-day written notice is properly served on the tenant. ██ The statutes require that a written statement of the amount of rent due and unpaid and the landlord's intention to proceed to enforce the terms of the lease shall be personally served, and the registered letter sent by the bank in the present case is by itself clearly deficient. ██ ". . . [S]ince none of the parties objected to the findings or conclusions of the court nor requested specific findings, we must resolve all conflicts and ambiguities in the findings in support of the judgment as well as infer logical and reasonable findings in support thereof. [Citations.]" (*Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 226-227 [69 Cal.Rptr. 251].) ██ The trial court made no express finding concerning the adequacy or inadequacy of the notice of default, but a finding that the notice was inadequate is clearly implied by the general findings and is supported by the record.

██ Finally, "The failure of the tenant to pay rent does not *ipso facto* work a forfeiture of the leasehold; it merely gives the lessor the right to terminate the lease in the manner provided by law, that is, by proceeding in accordance with Civil Code section 791 and Code of Civil Procedure section 1161, subdivision 2. [Citations.] ██ A lessor of demised premises is not entitled to take possession by forcible entry under a provision in the lease to the effect that if rent be due and unpaid the lessor may enter and remove all persons from the demised premises. [Citations.]" (*Haydell* v. *Silva,* 201 Cal.App.2d 20, 23-24 [19 Cal.Rptr. 705].) ██ Substantial evidence supports the trial court's finding that the lessors in the present case forcibly entered and retained possession of the demised premises unlawfully. ██ "Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not

715

be disturbed except by legal process." (*Jordan* v. *Talbot, supra,* 55 Cal.2d 597, 605.) Forcible entry is not confined to instances of physical force or restraint or threats of physical harm, but the purpose of the concept is to obviate incidents of self-help without the tenant's consent or resort to legal process. In addition, "The detention was unlawful, for a person who obtains possession to property by a forcible entry does not have the right to retain possession. [Citation.]" (*Jordan* v. *Talbot, supra,* p. 608.)

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.