Filed 8/31/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>

2710 SUTTER VENTURES,
LLC, et al.,

     Plaintiffs and Appellants,

v.

SEAN MILLIS et al.,

     Defendants and
Respondents.

</td><td>

A162439

(San Francisco City &
County Super. Ct. No.
CUD-20-667481)

</td></tr>
</table>

Plaintiffs brought this unlawful detainer action to evict defendants after invoking the Ellis Act (Gov. Code, § 7060 et seq.) (the Act). The trial court sustained defendants' demurrer, finding that plaintiffs' notice terminating defendants' tenancy was defective and plaintiffs failed to provide "proper required information regarding relocation payments" under section 37.9A, subdivision (e)(4) (section 37.9A(e)(4)) of the San Francisco Administrative Code (Rent Ordinance).[1] Plaintiffs argue the judgment must be reversed because: (1) the Act preempts section 37.9A(e)(4); (2) defendants cannot assert a defense under

---

[1] An amended version of section 37.9A of the Rent Ordinance was enacted after oral argument in this case and became effective on July 18, 2022. (Ord. No. 91-22.) All subsequent unspecified section references in this opinion are to the section 37.9A of the Rent Ordinance effective prior to July 18, 2022.

1

Government Code section 7060.6 for plaintiffs' purported failure to comply with section 37.9A(e)(4); (3) the trial court improperly found that plaintiffs' notice of termination had to strictly comply with section 37.9A(e)(4); and (4) plaintiffs should be allowed to amend their complaint to state a cause of action for ejectment. We find plaintiffs' arguments unavailing and affirm.

## BACKGROUND

Plaintiffs own a three-unit residential rental property in San Francisco and invoked the Act.[2] Defendants Sean Millis and Michelle Mattera are long-term tenants of one unit owned by plaintiffs at 2710 Sutter Street (the premises). Plaintiffs pled, based on information and belief, that Millis entered into a tenancy agreement for the premises with plaintiffs' predecessor in 1995. In 1999, Millis entered into a written tenancy agreement with plaintiffs' predecessor; plaintiffs further alleged, based on information and belief, that Mattera moved into the premises as a co-tenant in 2005. Plaintiffs alleged that defendants are the only occupants of the premises and the only persons entitled to relocation assistance payments under the Rent Ordinance.

On November 13, 2019, plaintiffs served defendants with a 120-Day Notice of Termination of Tenancy (the termination notice) and half of the relocation assistance payments due to defendants under the Rent Ordinance. In response to the termination notice, defendants both claimed disability status,

_____

[2] The facts set forth herein are taken from plaintiffs' operative first amended complaint.

2

and plaintiffs provided to each defendant one half of the additional relocation assistance payment due for disabled tenants.[3]

On November 15, 2019, plaintiffs filed a Notice of Intent to Withdraw Residential Units from the Rental Market (NOI) with the San Francisco Residential Rent Stabilization and Arbitration Board. On the same day, plaintiffs served defendants with a Notice to Tenant of Filing of Notice of Intent to Withdraw Residential Units from the Rental Market. Defendants exercised their right under the Act to a one-year extension of the withdrawal date of the premises based on their claims of disability status. Defendants did not vacate the premises by November 15, 2020, and plaintiffs filed an unlawful detainer suit.

With respect to the ground under which plaintiffs sought to recover possession, the termination notice stated, "Possession of the aforesaid premises is sought pursuant to San Francisco Administrative Code § 37.9(a)(13) and California Government Code §§ 7060 et. seq. The owners of the premises, 2710 Sutter Ventures, LLC and Sutter Partner Holdings, LLC ('owners' or 'landlords') intend to withdraw from rent or lease all rental units

---

[3] Plaintiffs state in their briefing that defendants were "in fact" paid what they were owed, and our dissenting colleague states that there is no dispute that there were only two "tenants" in the accommodations at issue and such tenants were paid what they were owed. (Dis. opn. *post*, at pp. 2–3) To the extent these statements imply that such matters have been conclusively established as fact, we note that, at this procedural stage, no facts have been conclusively established. On this appeal from a sustained demurrer, we accept the well-pled allegations of the first amended complaint as true.

within any detached physical structure and, in addition, in the case of any detached physical structure containing three or fewer rental units, any other rental units on the same lot, and complies [sic] in full with [Rent Ordinance] § 37.9A and California Government Code §§ 7060 et. seq. with respect to each such unit; provided, however, that a unit classified as a residential unit under chapter 41 of the [San Francisco Administrative Code] which is vacated under this subsection may not be put to any use other than that of a residential hotel unit without compliance with the provisions of [San Francisco Administrative Code] § 41.9."

The relevant portions of the termination notice addressing relocation assistance payments were as follows. On page 1, the termination notice provided, "You have rights and obligations under [Rent Ordinance] § 37.9A, including, but not limited to, the right to renew the tenancy if proper notification is given within 30 days after vacating the unit, and entitlement to certain relocation payments as described in more detail below. A true and correct copy of [Rent Ordinance] § 37.9A is attached hereto as Exhibit A and incorporated herein by reference. You are hereby notified of your rights as set forth in Exhibit A." At page 5, the termination notice stated, "You have rights to relocation assistance payments as follows: [¶] Each tenant of the premises shall be entitled to receive $6,985.23, one-half of which shall be paid at the time of the service of the notice of termination of tenancy, and one-half of which shall be paid when the tenant vacates the unit. In the event there are more than three tenants

4

in a unit, the total relocation payment shall be $20,955.68, which shall be divided equally by the number of tenants in the unit. If any tenant is 62 years of age or older, or if any tenant is disabled within the meaning of Section 12955.3 of the California Government Code, such tenant shall be entitled to receive an additional supplemental payment of $4,656.81, one-half of which shall be paid within fifteen (15) calendar days of the landlord's receipt of written notice from the tenant of entitlement to the supplemental relocation payment, and one-half of which shall be paid when the tenant vacates the unit." Plaintiffs attached as an exhibit the applicable version of Rent Ordinance section 37.9A and a copy of the San Francisco Rent Stabilization and Arbitration Board's form entitled, "Relocation Payments for Tenants Evicted Under the Ellis Act."

Defendants demurred to the plaintiffs' operative first amended complaint. As is relevant here, defendants argued their demurrer should be sustained because the termination notice was defective in two respects: (1) it quoted a superseded version of section 37.9, subdivision (a)(13) (section 37.9(a)(13)) as the ground for eviction, thus providing an inaccurate ground for eviction[4]; and (2) the termination notice did not properly advise

---

[4] After the Legislature amended the Act in 2003 to exempt certain units in residential hotels from its reach (*Pieri v. City and County of San Francisco* (2006) 137 Cal.App.4th 886, 890–891), the San Francisco Board of Supervisors made similar amendments to section 37.9(a)(13). The current version of this provision, and that operative at the time plaintiffs served their termination notice, states that a landlord shall not endeavor to recover possession of a rental unit unless: "The landlord wishes

5

defendants of the right to relocation assistance payments because it incorrectly referenced a superseded section of the Rent Ordinance regarding relocation payments.

After argument at the hearing on the demurrer, the trial court announced that it would sustain the demurrer and explained the basis for its ruling.  The trial court accepted the defendants' argument that strict compliance with notice provisions was required in the unlawful detainer suit, and found for defendants due to the following faults in the plaintiffs' termination notice:  (1) the termination notice quoted an outdated 2004 version of section 37.9(a)(13) as the ground for eviction; and 2) the termination notice did not provide the required information regarding the right to receive relocation payments. The court instructed defendants' counsel to prepare an order that complied with the court's oral pronouncement and to send the order to plaintiffs' counsel for approval.  The final written order of the court contained the following language:  "IT IS HEREBY

_____

to withdraw from rent or lease all rental units within any detached physical structure and, in addition, in the case of any detached physical structure containing three or fewer rental units, any other rental units on the same lot, and complies in full with Section 37.9A with respect to each such unit; provided, however, that guestrooms or efficiency units within a residential hotel, as defined in Section 50519 of the Health and Safety Code, may not be withdrawn from rent or lease if the residential hotel has a permit of occupancy issued prior to January 1, 1990, and if the residential hotel did not send a notice of intent to withdraw the units from rent or lease (Administrative Code Section 37.9A(f), Government Code Section 7060.4(a)) that was delivered to the Rent Board prior to January 1, 2004." (§ 37.9, subd. (a)(13).)

6

ORDERED that Defendants' Demurrer to the First Amended Complaint is SUSTAINED WITHOUT LEAVE TO AMEND. The Notice of Termination is fatally defective. Plaintiffs failed to provide proper required information regarding relocation payments under San Francisco Rent Ordinance § 37.9A(e)(3)-(4)." Plaintiffs timely appealed after entry of judgment.

DISCUSSION

## I. Standard of Review

We review an order sustaining a demurrer de novo. (*Boshernitsan v. Bach* (2021) 61 Cal.App.5th 883, 889.) We accept the truth of material facts properly pled in the operative complaint, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*) The proper interpretation of a statute is a question of law reviewed review de novo. (*Id.* at p. 890.) Whether state law preempts a local ordinance is also question of law subject to de novo review. (*Johnson v. City and County of San Francisco* (2006) 137 Cal.App.4th 7, 12 (*Johnson*).)

## II. The Act

The Act provides that "[n]o public entity . . . shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (Gov. Code, § 7060, subd. (a).)[5] "A landlord who complies with

---

[5] The Act excepts certain residential hotels from its ambit (Gov. Code, § 7060, subd. (a)(1)–(3)), but that exception is not relevant here.

7

the Ellis Act may therefore go out of the residential rental business by withdrawing the rental property from the market." (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 587 (*Drouet*).) The Legislature enacted the Act following the California Supreme Court's opinion in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97, which upheld city charter provisions that required owners of residential rental property to obtain a permit, available only in certain situations, before they could remove property from the rental market. (Gov. Code, § 7060.7.) "[T]he Act was intended to overrule the *Nash* decision so as to permit landlords the unfettered right to remove all residential rental units from the market, consistent, of course, with guidelines as set forth in the Act and adopted by local governments in accordance thereto." (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 165 (*Yarmark*).)

The "Act contains explicit boundaries, leaving areas for local control in a fashion consistent with its terms." (*Yarmark, supra*, 203 Cal.App.3d at p. 167.) "[C]ourts both recognize and respect the reservations of power set forth in the Ellis Act with respect to local government authorities." (*San Francisco Apartment Assn. v. City and County of San Francisco* (2016) 3 Cal.App.5th 463, 478.) For example, the Act provides that "[n]otwithstanding Section 7060, nothing in this chapter does any of the following: . . . Diminishes or enhances any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations." (Gov. Code, § 7060.1, subd. (c).) The Act does

not override procedural protections designed to prevent abuse of the right to evict tenants (*id*. at § 7060.7, subd. (c)), and it does not supersede certain statutory schemes, including those for landlord-tenant relationships (Civ. Code, § 1925 et seq.) and summary proceedings for obtaining possession of real property (Code Civ. Proc., § 1159 et seq.). (Gov. Code, § 7060.1, subd. (d).) The Act also allows public entities in rent control jurisdictions to require a landlord to provide notice to the public entity of the landlord's intention to withdraw a property from the rental market and to provide notice to tenants of this filing. (Gov. Code, § 7060.4, subd. (a).) The public entity may also enact legislation setting forth controls on re-renting a property once a notice of withdrawal has been filed, and it may require notice to tenants of their rights with respect to the re-rental. (*Drouet*, *supra*, 31 Cal.4th at p. 601 (conc. opn. J. Brown); Gov. Code, § 7060.2, subds. (a)(1), (b)).[6]

---

[6] The Act provides that any act permitted under Government Code sections 7060.2 and 7060.4 may be taken by the public entity by statute or ordinance, or by regulation as specified in Government Code section 7060.5. (Gov. Code, §§7060.2, 7060.4, subd. (a).) Government Code section 7060.5 states, "The actions authorized by Sections 7060.2 and 7060.4 may be taken by regulation adopted after public notice and hearing by a public body of a public entity, if the members of the body have been elected by the voters of the public entity. The regulation shall be subject to referendum in the manner prescribed by law for the ordinances of the legislative body of the public entity except that: [¶] (a) The decision to repeal the regulation or to submit it to the voters shall be made by the public body which adopted the regulation. [¶] (b) The regulation shall become effective upon adoption by the public body of the public entity and shall remain in effect until a majority of the

The Act contemplates that an owner may seek to displace a tenant or lessee from accommodations removed from the rental market under the Act pursuant to an unlawful detainer action. (Gov. Code, § 7060.6.)  If an owner elects to pursue an unlawful detainer suit, "[T]he tenant or lessee may appear and answer or demur pursuant to Section 1170 of the Code of Civil Procedure and may assert by way of defense that the owner has not complied with the applicable provisions of this chapter, or statutes, ordinances, or regulations of public entities adopted to implement this chapter, as authorized by this chapter."  (*Ibid.*)

## A. The Rent Ordinance

The City and County of San Francisco (the City) enacted the Rent Ordinance in 1979 for the purposes of, among other things, limiting rent increases for tenants in occupancy and restricting the grounds on which landlords could evict tenants. (*Danger Panda, LLC v. Launiu* (2017) 10 Cal.App.5th 502, 506 (*Danger Panda*).)

"In May 1986, following the passage of the Ellis Act, the Rent Ordinance was amended to add [section 37.9(a)(13)], which recognizes a landlord's right to withdraw a residential unit from the rental market." (*Danger Panda, supra,* 10 Cal.App.5th at p. 507.)  "Section 37.9A of the Rent Ordinance was enacted at the same time as section 37.9(a)(13) in order to confer rights on certain tenants displaced by the Ellis Act." (*Ibid.*)  Prior to

voters voting on the issue vote against the regulation, notwithstanding Section 9235, 9237, or 9241 of the Elections Code or any other law."

10

amendments in 2005, the City provided for relocation assistance payments to elderly and disabled tenants, as well as low-income tenants, who were displaced by withdrawals under the Act. (*Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1219 (*Coyne*).)

"In 2005, the City enacted ordinance No. 21–05 ('Ordinance 21–05'), which lifted the restrictions limiting the relocation assistance payments to low-income tenants and extended them to all displaced tenants.  [Citation.]  For units with more than three tenants, Ordinance 21–05 set $13,500 as the maximum relocation payment a landlord was required to pay per unit, in addition to the $3,000 add-on for evicted elderly and disabled tenants. [Citation.]  The ordinance also indexed these payments to annual inflation rates." (*Coyne, supra*, 9 Cal.App.5th at p. 1219.) Ordinance 21-05 further stated, "Any notice to quit pursuant to Section 37.9(a)(13) shall notify the tenant or tenants concerned of the right to receive payment under Subsections 37.9A(e)(1) or (2) or (3) and the amount of payment which the landlord believes to be due."  (§ 37.9A, former subd., (e)(4).)

In 2017, this Division addressed whether a tenant's minor child was entitled to be paid a relocation assistance payment as a "tenant" under the Rent Ordinance.  (*Danger Panda, supra*, 10 Cal.App.5th at pp. 505–506.)  The trial court granted the defendants' motion to quash the plaintiff's summons and unlawful detainer complaint because the plaintiff failed to tender a relocation assistance payment to the minor.  (*Id.* at p. 511.) This court reversed the judgment, interpreting section 37.9A,

11

subdivision (e)(3) to require payment of relocation assistance to a "tenant," and finding that a lawful minor occupant was not a "tenant" as defined in the Rent Ordinance. (*Id.* at p. 523.)

After *Danger Panda*, the City enacted ordinance No. 123-17 to amend section 37.9A, subdivision (e)(3). This provision provided in pertinent part, "Where a landlord seeks eviction based upon Section 37.9(a)(13), and the notice of intent to withdraw rental units is filed with the Board on or after February 20, 2005, relocation payments shall be paid to the tenants as follows: [¶] (A) Subject to subsections 37.9A(e)(3)(B), (C) and (D) below, the landlord shall be required to pay a relocation benefit on behalf of *each authorized occupant of the rental unit regardless of the occupant's age* ("*Eligible Tenant*"). The amount of the relocation benefit shall be $4,500 per Eligible Tenant, one-half of which shall be paid at the time of the service of the notice of termination of tenancy, and one-half of which shall be paid when the Eligible Tenant vacates the unit." (§ 37.9A, subd. (e)(3)(A), italics added.) For units with more than three "Eligible Tenants," $13,500 is the maximum relocation payment, in addition to the $3,000 add-on for evicted elderly and disabled tenants, and payments are indexed to annual inflation rates. (*Id.* at subd. (e)(3)(B)–(D).) The Rent Ordinance still provided that "[a]ny notice to quit pursuant to Section 37.9(a)(13) shall notify the tenant or tenants concerned of the right to receive payment under Subsections 37.9A(e)(1) or (2) or (3)." (§ 37.9A(e)(4).)

12

**III.    The Act Does Not Preempt Section 37.9A(e)(4)[7]**

We turn first to plaintiffs' argument that the Act preempts section 37.9A(e)(4).

" 'A city or county may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations that do not conflict with general law.  (Cal. Const., art. XI, § 7.)  If local legislation conflicts with state law, it is preempted by the state law and is void.' " (*Johnson*, *supra*, 137 Cal.App.4th at p. 13.)

"A conflict between local ordinance and state law exists if the local law duplicates, contradicts, or regulates an area fully occupied by general law, either expressly or by legislative implication.  [Citation.]  'The first step in a preemption analysis is to determine whether the local regulation explicitly conflicts with any provision of state law.  [Citation.] [¶]  If the local legislation does not expressly contradict or duplicate state law, its validity must be evaluated under implied preemption principles.  "In determining whether the Legislature has preempted by implication to the exclusion of local regulation we

_____

[7] Although defendants point out that plaintiffs did not raise a preemption argument below, we will entertain plaintiffs' argument on appeal from a judgment following a ruling sustaining a demurrer without leave to amend.  (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244–1245 [appellate review of a general demurrer is de novo to determine whether the complaint alleges "facts sufficient to state a cause of action under any possible legal theory," so a legal theory presented for the first time on appeal may be raised (italics omitted)].)

must look to the whole purpose and scope of the legislative scheme. There are three tests: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' " ' " (*Johnson*, *supra*, 137 Cal.App.4th at pp. 13–14.)

Relying on *Johnson* and *Coyne,* plaintiffs argue that the Act preempts section 37.9A(e)(4) because that provision imposes a prohibitive price on a landlord's right to exit the rental market. With this argument, plaintiffs seek to invoke conflict, or contradiction, preemption. (*Coyne, supra*, 9 Cal.App.5th at pp. 1226–1227 ["[T]he prohibitive price standard is the appropriate standard to determine conflict [or contradiction] preemption under the Ellis Act"].)

In *Johnson*, this Division considered whether the Act preempted part of the then-operative version of section 37.9A(e)(4), which required landlords to notify tenants of the right to receive relocation assistance payments and " 'the amount of payment which the landlord *believes to be due.*' " (*Johnson, supra*, 137 Cal.App.4th at pp. 11, 16.) The "belief requirement" was the only part of section 37.9A(e)(4) at issue in *Johnson*.

14

(*Ibid.*) Because the Rent Ordinance provided for additional relocation assistance payments to elderly or disabled tenants, the belief requirement made the landlord state whether he or she believed the tenants were entitled to payment based on their age or disability. (*Ibid.*) The court held this requirement was preempted because "it create[d] a substantive defense in eviction proceedings not contemplated by the Act." (*Id.* at p. 18.) The court reviewed the Act's provisions regarding tenant notice, observing that " '[b]y carefully spelling out certain types of notice which public entities may require, the Act clearly indicates that only these types are authorized and other, additional notice requirements are not permissible.' " (*Id.* at p. 16.) The court considered several ways a landlord's statements under the "belief requirement" could complicate unlawful detainer proceedings by resulting in tenant challenges to the accuracy of the landlord's belief or claims against the landlord where the landlord mistakenly suggested the tenant had a disability. (*Id.* at p. 17.) The court also rejected the City's argument that the belief requirement was permissible under Government Code section 7060.1, subdivision (c), finding the requirement did not truly "mitigate [the] adverse impact[s]" on displaced tenants, as required under that statute. (*Id.* at pp. 16, fn. 7, 18.) Instead, by placing the burden on the landlord to state his or her belief about the tenant's entitlement to assistance without first requiring the tenant to offer some showing of entitlement, the belief

15

requirement placed a "prohibitive price on a landlord's right to exit the rental market."[8] (*Ibid.*)

Likewise, *Coyne* found that certain provisions of the Rent Ordinance, which required a landlord who evicted a tenant under the Act to pay two years' worth of "rent differential" between the rent-controlled price of the unit and the market price, imposed a "prohibitive price" on landlords' exercise of their rights to go out of business. (*Coyne*, *supra*, 9 Cal.App.5th at pp. 1218, 1226–1227.) As in *Johnson*, *Coyne* rejected the argument that the rent differential payments mitigated the adverse impacts of the landlord's decision to remove residential units from the market: Rent differential payments were not directed at impacts such as the need to pay first and last months' rent and a security deposit on a replacement rental or moving expenses, but rather were " 'explicitly implemented to subsidize the payment of rent that a displaced tenant will face on the open market, regardless of income.' " (*Id.* at p. 1227, italics omitted.) The provisions requiring rent differential payments were therefore invalid for imposing a condition not found in the Act. (*Id.* at pp. 1229–1230.)

Unlike the provisions of the Rent Ordinance at issue in *Johnson* and *Coyne*, we cannot conclude that the Act preempts section 37.9A(e)(4). "Section 7060.1(c)'s 'safe harbor' provision authorizes cities to mitigate 'any adverse impact' from

---

[8] The language of the "belief requirement" (i.e., "the amount of payment which the landlord *believes to be due*") still appeared in the official published version of the San Francisco Administrative Code, although *Johnson* held the Act preempted such language. (§ 37.9A(e)(4).)

16

displacement." (*Coyne, supra*, 9 Cal.App.5th at p. 1227.) The Rent Ordinance's requirement that landlords pay reasonable relocation assistance benefits is a "valid and appropriate exercise[] of a public entity's power to mitigate adverse impacts on displaced tenants under section 7060.1, subdivision (c)." (*Coyne*, at p. 1228; see also *Pieri v. City and County of San Francisco, supra*, 137 Cal.App.4th at pp. 893–894 (*Pieri*); *Johnson, supra*, 137 Cal.App.4th at p. 16, fn. 7 ["[S]ection 7060.1, subdivision (c), specifically addresses the permissibility of relocation assistance, providing that nothing in the Ellis Act '[d]iminishes or enhances any power in any public entity to mitigate any adverse impact on persons displaced by reason of the withdrawal from rent or lease of any accommodations' "].) Unlike the belief requirement at issue in *Johnson*, and as *Johnson* itself appears to have recognized (*Johnson*, at pp. 16, fn. 7, 18), notice to tenants of the right to relocation payments validly serves to mitigate the adverse impacts on displaced persons under Government Code section 7060.1, subdivision (c). (See *id.* at § 7060.7, subd. (c) [the Act does not override procedural protections designed to prevent abuse of right to evict tenants].)

Nor does section 37.9A(e)(4)'s notice requirement create an undue burden. "Any notice to quit pursuant to Section 37.9(a)(13) shall notify the tenant or tenants concerned of the right to receive [relocation assistance] payment . . . ." (§ 37.9A(e)(4).) The notice required is to "tenant" or "tenants." As *Danger Panda* explained, "tenant" as used in section 37.9A,

17

subdivision (e) is defined in section 37.2, subdivision (t) of the Rent Ordinance and means persons " 'entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others.' " (*Danger Panda, supra*, 10 Cal.App.5th at pp. 513–517; see also Ord. No.123-17, §§ 1–2 [amending section 37.9A, subd. (e)(3) after *Danger Panda* to require relocation assistance benefits be paid on behalf of "Eligible Tenants" rather than "tenants," but leaving reference to "tenant" and "tenants" under section 37.9A(e)(4)].) Thus, what is required is that the landlord notify tenants, who clearly reside at an address known to the landlord, in the termination notice of the right to relocation assistance payments under section 37.9A, subdivision (e). This simple notice requirement is easily complied with and does not put a prohibitive price on the landlord's right to go out of business.

Finally, plaintiffs devote much of their briefing to the argument that, on their face, the timing requirements for payment under section 37.9A, subdivision (e)(3)(A) place a prohibitive price on the landlord's ability to go out of business because the landlord must guess who lives in a residence and pay that person relocation assistance on day one, rather than having the person who claims entitlement to the benefit provide proof of occupancy before the landlord must pay. But defendants' argument below was that the termination notice improperly failed to inform defendants that the right to relocation benefits included the right to payment of such benefits on behalf of

18

"Eligible Tenants," and children specifically. Plaintiffs do not appear to argue that the City has no authority to require that relocation assistance benefits be paid on behalf of authorized occupants. Instead, they argue the timing of the Rent Ordinance's payment requirement creates the undue burden. The trial court did not sustain a demurrer on the ground that plaintiffs' notice of termination failed to provide notice of, or satisfy, the Rent Ordinance's payment timing mechanism, so any finding that the Act preempts the payment timing provisions of section 37.9A, subdivision (e)(3)(A) would not assist plaintiffs here. We therefore do not address this argument.

## IV. Government Code Section 7060.6

Plaintiffs next contend that the judgment must be reversed because defendants cannot assert failure to comply with section 37.9A, subdivision (e)(3) or (e)(4) as a defense under Government Code section 7060.6. More specifically, plaintiffs seem to suggest that only noncompliance with local regulations (Gov. Code, § 7060.5) that implement Government Code sections 7060.2 and 7060.4 may serve as a defense under Government Code section 7060.6. Defendants counter that section 37.9A(e)(4) implements the Act, as authorized by the Act, and the defense under Government Code section 7060.6 is not limited to noncompliance with local actions taken pursuant to Government Code sections 7060.2 and 7060.4. On this question of statutory interpretation, defendants have the better argument.

In construing a statute, " 'our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose

19

of the statute.' [Citation.] We start with the language of each statute, giving the words their usual and ordinary meaning, and construe the statutory language in the context of the statute as a whole and the overall statutory scheme, giving significance to every word, phrase, sentence, and part of an act. We do not construe statutes in isolation, but rather read each statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain its effectiveness. If statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. In such circumstance, we will choose the construction that comports most closely with the Legislature's apparent intent, and endeavor to promote rather than defeat the statute's general purpose, and avoid a construction that would lead to absurd consequences." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 440.)

Government Code section 7060.6's plain language establishes that a defense thereunder is not limited to noncompliance with regulations adopted under Government Code sections 7060.2, 7060.4, and 7060.5. The statute states, "If an owner seeks to displace a tenant or lessee from accommodations withdrawn from rent or lease pursuant to this chapter by an unlawful detainer proceeding, the tenant or lessee may appear and answer or demur pursuant to Section 1170 of the Code of Civil Procedure and may assert by way of defense that the owner has not complied with the applicable provisions of this chapter, or statutes, ordinances, or regulations of public entities adopted to

20

implement this chapter, as authorized by this chapter."
(Gov. Code, § 7060.6.) The Legislature could have confined the defense set forth in Government Code section 7060.6 to an owner's noncompliance with statutes, ordinances, or regulations of public entities adopted to implement Government Code sections 7060.2 and 7060.4, as authorized by those specific provisions. (See Gov. Code, § 7060.5 ["The actions authorized by Sections 7060.2 and 7060.4 may be taken by regulation . . . ."].) It did not. Instead, a broader defense may be asserted for violation of the provisions of the Act, "or statutes, ordinances, or regulations" adopted to implement the Act, "as authorized by this chapter." (*Id*. at § 7060.6) Section 37.9A(e)(4) is such a provision.

First, the Act authorized the City to enact section 37.9A(e)(4) through Government Code section 7060.1, subdivision (c). The Act renders void local legislation that compels a landlord to stay in the residential rental business (Gov. Code, § 7060), but it "contains explicit boundaries, leaving areas for local control in a fashion consistent with its terms." (*Yarmark*, *supra*, 203 Cal.App.3d at p. 167.) When enacted, Government Code section 7060.1, subdivision (c) allowed public entities to mitigate the adverse impacts of a landlord's decision to withdraw accommodations only for displaced persons in low-income households. (*Pieri*, *supra*, 137 Cal.App.4th at pp. 889–890.) The 2003 amendments (Stats. 2003, ch. 766, § 2) removed the low-income restriction, so section 7060.1, subdivision (c) of the Government Code now recognizes a public entity's authority to enact ordinances that mitigate the adverse impacts on all

21

displaced persons.  (*Id.* at pp. 890–892, 893, fn. 4 ["We interpret current section 7060.1, subdivision (c)'s provision that the Ellis Act was not intended to diminish or enhance public entities' power to mitigate adverse impacts on tenants displaced from any accommodation to mean that local governments may take such actions as would be allowed under their police power in the absence of the [Act]"]; *Coyne, supra,* 9 Cal.App.5th at p. 1227 ["Section 7060.1, subd. (c)'s 'safe harbor' provision authorizes cities to mitigate 'any adverse impact' from displacement"].  The Act thus authorized the City to require landlords to give notice of the right to relocation assistance benefits as part of the power to mitigate the adverse impacts on displaced persons.

Next, under the plain meaning of the term, section 37.9A(e)(4) "implements" the Act, as required for a non-compliance defense to fall within Government Code section 7060.6.  "Implement" means "to carry out, accomplish; to give practical effect to and ensure actual fulfillment by concrete measures."  (Webster's New Collegiate Dictionary (1981) p. 571.) Plaintiffs concede that local ordinances or regulations enacted by public entities that are authorized, but not required, by Government Code sections 7060.2 and 7060.4 implement the Act. When these local restrictions are adopted by ordinance, the public entity's police power is not preempted, and the local legislation gives practical effect to the Act's authorization of power.  Similarly, through Government Code section 7060.1, subdivision (c), the Act authorizes the City's power to mitigate adverse impacts on persons displaced by the withdrawal of

22

accommodations from the rental market.  (*Coyne*, *supra*, 9 Cal.App.5th at p. 1227; *Pieri*, *supra*, 137 Cal.App.4th at p. 893, fn. 4.)  The City enacted section 37.9A(e)(4) to give practical effect to the power authorized by Government Code section 7060.1, subdivision (c).  As such, defendants may assert a noncompliance defense under Government Code section 7060.6 for violation of section 37.9A(e)(4).

Furthermore, even if Government Code section 7060.6 were interpreted to create a defense only for noncompliance with provisions of the Act, and the statutes, ordinances, or regulations authorized by Government Code sections 7060.2 and 7060.4, we would still find that defendants could assert noncompliance with section 37.9A(e)(4) as a defense in this action.  This is so because the City conditioned a landlord's withdrawal from the rental market on compliance with section 37.9A, subdivision (e).  (§ 37.9, subd. (a)(13) [stating  landlord "shall not endeavor to recover possession of a rental unit" unless the conditions enumerated therein are met].)  The Act preempts only "local measures providing substantive grounds for defenses in unlawful detainer actions . . . *to the extent they conflict with the [ ] Act*."  (*Yarmark*, *supra*, 203 Cal.App.3d at p. 171, italics added.)  As noted, *ante*, the City's basic requirements that landlords pay reasonable relocation assistance benefits and give notice of the right thereto are permitted by, and do not conflict with, the Act.  And Government Code section 7060.6 does not state that only the defenses specified therein may be asserted in an unlawful detainer proceeding.  Thus, separate and apart from Government

23

Code section 7060.6, the City created a defense to eviction that does not conflict with the Act.

Indeed, plaintiffs' contrary interpretation—whereby Government Code section 7060.6 would allow a defense only for noncompliance with the provisions of the Act and local statutes, ordinances, or regulations authorized by Government Code sections 7060.2 and 7060.4, while at the same time prohibiting a defense for failure to comply with the general notice and relocation assistance payments requirements of section 37.9A, subdivision (e)—would be absurd. Under plaintiffs' view, although a local ordinance may validly require notice and reasonable relocation assistance payments in evictions under the Act, failure to comply with those requirements could not be a defense to summary eviction. Plaintiffs suggest that tenants could instead bring separate lawsuits against owners after having been evicted. But one main purpose of relocation assistance payments is to provide displaced tenants with money to assist with the costs of moving. Any construction of Government Code section 7060.6 that prohibits a tenant from defending against summary eviction based on the owner's failure to notify the tenant of the right to relocation assistance benefits or to provide such benefits would largely defeat the purpose of the notice and relocation assistance requirements, and thus undermine the mitigation measures authorized by the Act.

## V. Compliance with the Rent Ordinance

Plaintiffs' final argument requires us to determine whether the termination notice complied with section 37.9A(e)(4) and,

24

relatedly, what standard applies to assess such compliance. Defendants argue that plaintiffs did not strictly comply with the notice provision as required by the Rent Ordinance and unlawful detainer jurisprudence (e.g., *Kwok v. Bergren* (1982) 130 Cal.App.3d 596, 599–600). Plaintiffs initially argued that Government Code section 7060.6 provides the applicable standard, and that section 7060.6 mandates a straightforward "mere compliance" standard by abrogating the strict compliance standard used in unlawful detainer actions.[9] In their supplemental brief, however, plaintiffs claim that the doctrine of substantial compliance applies.[10] As set forth below, we conclude that, regardless of whether the strict compliance standard applies to the notice at issue, the trial court correctly found a lack of compliance.

Courts have applied the doctrine of substantial compliance with statutory requirements when, as a practical matter, they can reasonably conclude that partial compliance with a law has fully attained the statute's objectives. (3 Sutherland, Statutory Construction (8th ed. 2021) § 57:26.) " ' "Substantial compliance, as the phrase is used in the decisions, means actual compliance

---

[9] In relying on Government Code section 7060.6, at least for purposes of this argument, plaintiffs appear to accept that a defense for noncompliance with section 37.9A(e)(4) may be asserted under Government Code section 7060.6.

[10] We requested that the parties provide supplemental briefing on the questions of whether the doctrine of substantial compliance applies in this unlawful detainer proceeding and whether the doctrine would apply in a common law action for ejectment.

25

in respect to the substance essential to every reasonable objective of the statute." [Citation.] Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied.' [Citation.] 'Thus, the doctrine gives effect to our preference for substance over form, but it does not allow for an excuse to literal noncompliance in every situation.' ' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332–1333, italics omitted.)

Nonetheless, "strict compliance with a statute is warranted when our Legislature evinces its intent that the statute's requirements are to be followed precisely. We may infer such an intent when (1) 'the Legislature has provided a detailed and specific mandate' [Citations], or (2) 'the intent of [the] statute can only be served by demanding strict compliance with its terms.' " (*Prang v. Los Angeles County Assessment Appeals Board No. 2* (2020) 54 Cal.App.5th 1, 19 (*Prang*); see *People v. CHR Herbal Remedies* (2017) 12 Cal.App.5th Supp. 26, 31 [rules of statutory interpretation apply to ordinances].) Further, "the doctrine of substantial compliance does not apply at all when a statute's requirements are mandatory, instead of merely directory. [Citations.] A mandatory statute or directive 'is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance.' " (*Troyk v.*

*Farmers Group, Inc.*, *supra*, 171 Cal.App.4th at p. 1333 (italics omitted).)

Here, the enactment against which compliance must be measured is the Rent Ordinance. The Act allows the San Francisco Board of Supervisors to exercise its power to require the notice and relocation assistance payments at issue (Gov. Code, §§ 7060.1, subd. (c); 7060.7, subd. (c)), and the Legislature enacted this allowance with awareness of pre-Act case law that upheld local government authority to require relocation assistance payments and to create a substantive defense to evictions for violation of such requirement. (See *Pieri*, *supra*, 137 Cal.App.4th at pp. 892–893; see also *Briarwood Properties, Ltd. v. City of Los Angeles* (1985) 171 Cal.App.3d 1020, 1032.) Furthermore, the Act does not dictate the language of local legislation aimed at mitigating the adverse impacts on displaced persons or local legislation providing procedural protections designed to prevent abuse of the right to evict. (Gov. Code, §§ 7060.1, subd. (c), 7060.7, subd. (c).) Thus, so long as local legislation providing for mitigation does not conflict with the Act, the power to dictate the terms thereof rests with local government.

In this case, the local government has made clear its intent that the Rent Ordinance's requirements be followed precisely. (*Prang, supra,* 54 Cal.App.5th at p. 19.) The Rent Ordinance provides that a landlord "shall not endeavor to recover possession of a rental unit unless . . . [t]he landlord wishes to withdraw from rent or lease all rental units within any detached physical

27

structure and, in addition, in the case of any detached physical structure containing three or fewer rental units, any other rental units on the same lot, and *complies in full* with Section 37.9A with respect to each such unit[.]"[11]  (§ 37.9, subd. (a)(13), italics added.)  "In full" is synonymous with "fully," which means "in a full manner or degree: completely."  (Webster's New Collegiate Dict. (1981) p. 460.)  On its face, then, the Rent Ordinance requires complete compliance with section 37.9A(e)(4).  Section 37.9A(e)(4) also states that "[a]ny notice to quit pursuant to Section 37.9(a)(13) *shall notify* the tenant or tenants concerned of the right to receive payment under Subsections 37.9A(e)(1) or (2) or (3)[.]"  (Italics added.)  Use of the word "shall," coupled with the plain language of section 37.9, subdivision (a)(13), evinces the San Francisco Board of Supervisors' intent that the notice requirement under section 37.9A(e)(4) be complied with precisely.

Further, the directive at issue is that the landlord notify tenants of the full scope of the right to receive relocation assistance payments under section 37.9A, subdivision (e)(1), (2), or (3).  In finding compliance here, our dissenting colleague seems to suggest that the statute only requires the landlord to provide notice personalized to each tenant's specific circumstances.

---

[11] In their supplemental brief, plaintiffs argue that the text of the Rent Ordinance does not use the adjective "strictly" to modify "comply."  In so arguing, plaintiffs concede that the language of the Rent Ordinance is pertinent.  In a footnote, plaintiffs state that the Act may preempt the Rent Ordinance's use of the term "in full," but we decline to consider an argument mentioned only in a footnote.  (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 140, fn. 6.)

28

(Dis. opn. *post*, at p. 3)  Under this theory, for example, notice of the right to additional relocation assistance payments based on elderly and disabled status would be required only if the tenant at issue were, in fact, elderly or disabled.  But *Johnson* forecloses such an interpretation.  There, the court held that the Act preempted the "belief requirement" in the then-operative version of section 37.9A(e)(4), which required landlords to notify tenants of " 'the amount of [relocation assistance] payment which the landlord *believes to be due.*' "  (*Johnson*, *supra*, 137 Cal.App.4th at pp. 11, 16, italics added.)  Because this belief requirement put the burden on the landlord to, in essence, personalize the notice by stating whether the tenants were entitled to payment based on their age or disability—information potentially unknown to the landlord—and there was a substantive defense to eviction for violation of this requirement, the belief requirement placed a prohibitive price on the landlord's right to exit the rental market and was preempted.  (*Id.* at pp. 16–18.)  Plaintiffs have claimed in this appeal that, similar to a landlord's lack of knowledge regarding whether a tenant is elderly or disabled, a landlord may lack knowledge regarding whether certain "Eligible Tenants," including children, live in the rental accommodations.  The current section 37.9A(e)(4) provides a simple mechanism that provides tenants with information regarding the full scope of the right to relocation assistance payments under section 37.9A, subdivision (e)(1), (2), or (3); enables tenants to claim entitlement to the relocation assistance benefits that must be paid on behalf

of each "Eligible Tenant"; and does not impermissibly burden landlords.  (§ 37.9A, subd. (e)(3)(A)–(C).)[12]

Plaintiffs' termination notice did not fully comply with the notice requirement at issue.  "The right to receive payment" under section 37.9A, subdivision (e)(3) includes the right to payment of "a relocation benefit on behalf of each authorized occupant of the rental unit regardless of the occupant's age ('Eligible Tenant')[,]" and to additional payments for elderly or disabled Eligible Tenants.  (§ 37.9A, subd. (e)(3)(A), (C).) Plaintiffs' termination notice stated on page one, "You have rights and obligations under [Rent Ordinance] § 37.9A, including, but not limited to, the right to renew the tenancy if proper notification is given within 30 days after vacating the unit, and entitlement to certain relocation payments as described in more

_____

[12] The ordinance speaks to relocation payments that are "paid to the tenants."  (§ 37.9A, subd. (e)(3) ["Where a landlord seeks eviction based upon Section 37.9(a)(13), and the notice of intent to withdraw rental units is filed with the Board on or after February 20, 2005, relocation payments shall be paid to the tenants as follows . . . ."].)  Although at first blush it may seem confusing for section 37.9A(e)(3) to use the term "tenants" in this clause—shortly before using the defined term "Eligible Tenant" later within the same section—this use of the term "tenants" makes sense when one considers that, under the Rent Ordinance, "tenants" would *receive* payments *on behalf of* all "Eligible Tenants," the latter term being one that would include an occupant who is a child.  It would make little sense to require a landlord to make a payment directly to an infant (who would qualify as an "Eligible Tenant"), for example, but it would be perfectly sensible to require a landlord to make a payment to a tenant, such as the leaseholder in the unit or an approved subtenant (§ 37.2, subd. (t)), on behalf of that infant.

detail below. A true and correct copy of [Rent Ordinance section] 37.9A is attached hereto as Exhibit A and incorporated herein by reference. You are hereby notified of your rights as set forth in Exhibit A." (Italics added.) Then, at the promised more detailed description of relocation assistance payments on page five, the termination notice stated, "You have rights to relocation assistance payments as follows[:]" and thereafter stated that "each tenant" was entitled to a relocation assistance payment, if there were more than three "tenants," a capped payment would be divided equally between tenants, and any "tenant" who was elderly or disabled was entitled to a supplemental payment. But that explanation was not complete. Although plaintiffs also attached an accurate copy of section 37.9A to the termination notice, in doing so, they provided inconsistent information with no explanation regarding the discrepancy.[13] We cannot conclude that a tenant would reasonably understand that Exhibit A, and not the language within the termination notice itself, in fact provided the accurate information. Plaintiffs thus did not fully comply with their obligation to notify defendants of the right to receive relocation assistance payments as required by section 37.9A(e)(4).

Even if the doctrine of substantial compliance were potentially applicable, unlike our dissenting colleague, we would still find plaintiffs' notice deficient. " 'The doctrine of substantial compliance does not allow an excuse to literal noncompliance in

---

[13] The attached Section 37.9A is nine pages long, and subdivision (e)(3) appears at pages three and four.

31

every situation. [Citation.] It "excuses literal noncompliance only when there has been 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " ' " (*Andrews v. Metropolitan Transportation Authority* (2022) 74 Cal.App.5th 597, 607 (*Andrews*).)

Here, there was not actual compliance in respect to the substance of every reasonable objective of section 37.9A(e)(4). One purpose of the notice requirement is to provide tenants subject to evictions under the Act information regarding the full scope of the right to relocation assistance benefits. This serves to ensure that each tenant has the information needed to understand what payment is due (to all "Eligible Tenants") where the tenant may be in the best position to ascertain what payment is due. Given the termination notice's omission of clear information regarding the landlord's obligation to provide a relocation payment on behalf of "each authorized occupant . . . regardless of the occupant's age" and the obligation to provide additional benefits where such persons are disabled or elderly, the landlord failed to satisfy the Rent Ordinance's goal of ensuring that tenants receive clear information regarding the full scope of the right to relocation assistance benefits.

Plaintiffs' notice also failed to satisfy another objective of section 37.9(e)(4). Analogizing to California's first comprehensive anti-rent gauging and eviction control law, the Tenant Protection Act of 2019 (Assem. Bill No. 1482 (2019–2020 Reg. Sess.)), we believe the notice requirement at issue also serves to protect against abusive evictions in that it acts as a partial deterrent to a

32

landlord's disingenuous use of the right to evict under the Act to evade the City's rent control law. Our Legislature has recognized that requiring relocation assistance payments in non-fault evictions under the Tenant Protection Act of 2019 serves to deter abusive non-fault evictions. (Sen. Com. on Judiciary, Analysis of Assem. Bill 1482, as amended June 28, 2019, p. 9 [TPA relocation assistance payment requirements for non-fault evictions act as at least a partial deterrent to a landlord making an end run around the TPA's rent caps].)[14] As under the TPA, a landlord is less likely to disingenuously invoke the Act as a just cause for eviction under the Rent Ordinance if the landlord must pay relocation assistance benefits, and a maximal deterrent purpose is further served if the landlord must provide tenants with information regarding the full scope of the right to relocation assistance payments, which will enable them to claim the largest available relocation assistance payment in all circumstances. Because it did not fully and accurately apprise defendants of the entirety of "the right to receive payment" encompassed within section 37.9A,

---

[14] Where a local jurisdiction enacted a just cause eviction ordinance on or before September 1, 2019, or where a local jurisdiction enacted or amended a just cause eviction ordinance after September 1, 2019, and that ordinance is more protective than the TPA, including where the local ordinance provides for higher relocation assistance payments than the TPA, the local ordinance remains operative over the TPA. (Civ. Code, § 1946.2, subd. (g)(1)(A), (B).) We agree with the parties that the TPA is not directly applicable here because the Rent Ordinance provides higher relocation assistance payments than the TPA.

subdivision (e)(3), plaintiffs' termination notice does not comply with this objective.[15]

Our dissenting colleague rejects this analysis, saying that the defendants received "precisely, completely, and understandably all of the information required by the ordinance." (Dis. opn. *post*, at p. 1.) Although the dissent concedes that the notice would have been "incomplete and misleading" if the plaintiffs had provided it in a situation where the unit was also occupied by a child or other authorized occupant, our colleague nonetheless contends that the notice here was fully compliant because "it is undisputed that no one other than the two adult defendants occupied the premises, and *as to them* the notice was absolutely, and literally, accurate." (Dis. opn. *post*, at pp. 2–3, italics added.)

In our view, one problem with this reasoning is that section 37.9A(e)(4) requires the landlord to give notice of "*the* right to receive payment under this subsection 37.9A(e)(1) or (2) or (3)." (§ 37.9A(e)(4), italics added.) The Ordinance does not require the landlord to provide tenants notice of *their* right to receive payment—i.e., notice tailored to what the landlords subjectively believe their specific tenants are entitled to under one of the specified subsections. The reason for this "the/their" distinction is becomes apparent when one unpacks our dissenting colleague's hypothetical: If, as here, a landlord presumes to notify a tenant of the payment amount to which the landlord believes the tenant

---

[15] We deny each of plaintiffs' requests for judicial notice as irrelevant.

34

is entitled, but the landlord is wrong (because the tenant has a child, unbeknownst to the landlord, for example), the shorted tenant would have no way of knowing that the stated payment amount was deficient in a case where the notice of the right to a relocation benefit is, as here, tailored to that specific tenant—because, obviously, when the notice is tailored to a specific tenant, it would invariably match the landlord's calculation of that specific tenant's presumed payment amount. In a situation where the landlord notifies a tenant of the presumed payment amount (which is no longer required under *Johnson*), only by the landlord accurately notifying a tenant of the entire scope of "*the* right to receive payment under this subsection 37.9A(e)(1) or (2) or (3)" can tenants be fully apprised of the information necessary to confirm whether the landlord's assessment of the relocation benefit amount is in fact accurate. Put another way, where the Ordinance requires the landlord to notify tenants of "*the* right to receive payment" as set forth under the Ordinance (by the simple expedient of quoting the language of the relevant subsections, including the definition of "Eligible Tenant"), that requirement cannot be satisfied by a notice, the accuracy of which *varies depending on the identity of the recipient*.

Accordingly, we affirm the trial court's sustaining of the demurrer.

## VI. Leave to Amend

" 'If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.

35

[Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 433.)

Plaintiffs seek to amend their compliant to assert a claim for ejectment, but they have not established entitlement to leave to amend. The essential elements of an ejectment action are (1) the plaintiff's valid interest in the property and (2) the defendant's wrongful possession and withholding thereof. (*Payne & Dewey v. Treadwell* (1860) 16 Cal. 221, 243; *Baugh v. Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 675, superseded by statute on other grounds as noted in *WDT– Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526.) Plaintiffs claim they could amend their complaint to assert a viable claim for ejectment, but they do not discuss the required elements or show how they could be met. Specifically, plaintiffs do not explain how they could maintain an action for ejectment when the defendants are not in "wrongful possession" of plaintiffs' property due to plaintiffs' failure to satisfy the notice requirement of section 37.9(e)(4).

## DISPOSITION

The judgment is affirmed.

BROWN, J.

36

WE CONCUR:

NADLER, J.*

*2710 Sutter Ventures, LLC, et al. v. Millis et al.* (A162439)

---

* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**POLLAK, P.J., dissenting**

I concur unreservedly with the analysis and conclusions in sections I through IV of the Discussion in the majority opinion. I agree that the Ellis Act does not preempt section 37.9A(e)(4) (section 37.9A(e)(4)) of the San Francisco Administrative Code (Rent Ordinance)[1], and that the landlord's failure to comply with section 37.9A, subdivision (e)(3) or (e)(4) is a valid defense to an unlawful detainer action based on the landlord's removal of the premises from the rental market. However, I strongly disagree with the conclusion in section V (maj. opn., *ante*) that the plaintiffs here did not comply with section 37.9A(e)(4). To the contrary, whether the standard is strict or substantial compliance, plaintiffs' notice gave the tenants precisely, completely, and understandably all of the information required by the ordinance. The majority's conclusion that this was not adequate, in my view, injects into the ordinance an interpretation not only unfair and unreasonable under the present circumstances, but sure to cause mischief in the future.

The termination notice in this case told the tenants, on page 1, "*You* have rights and obligations under § 37.9A, including . . . entitlement to certain relocation payments as described in more detail below." (Italics added.) Then, on page 5, "*You* have rights to relocation assistance payments as follows: [¶] Each tenant of the premises shall be entitled to receive $6,985.23, one-half of which shall be paid at the time of the service of the notice of termination of tenancy, and one-half of which shall be paid when the tenant vacates the unit. . . . [I]f any tenant is disabled within the meaning of

---

[1] An amended version of section 37.9A of the Rent Ordinance was enacted after oral argument in this case and became effective on July 18, 2022. (Ord. No. 91-22.) All subsequent unspecified section references in this opinion are to the section 37.9A of the Rent Ordinance effective prior to July 18, 2022.

1

Section 12955.3 of the California Government Code, such tenant shall be entitled to receive an additional supplemental payment of $4,656.81, one-half of which shall be paid within fifteen (15) calendar days of the landlord's receipt of written notice from the tenant of entitlement to the supplemental relocation payment, and one-half of which shall be paid when the tenant vacates the unit."[2] (Italics added.) There is no dispute that two adult tenants occupied the premises,[3] that the stated dollar amounts were calculated correctly, and that each of the two tenants was paid and accepted one-half the amounts due when the notice was served and following advisement of their asserted disability. Unquestionably, the tenants were correctly told what they were entitled to receive as relocation payments. In addition, the notice included, as Exhibit A, a complete copy of the current version of the Rent Ordinance, with the admonishment, "You are hereby notified of your rights as set forth in Exhibit A." (Italics added.)

The majority deems this indisputably accurate information inadequate because the notice refers to a "tenant" rather than to an "Eligible Tenant" as then defined to include children and other authorized occupants of the premises. Granted that if the premises had been occupied by a child or another authorized tenant, the reference to a "tenant" being entitled to a relocation payment would have been incomplete and misleading. But at this stage of the litigation, it is undisputed that no one other than the two adult

---

[2] As appears in the full text of the notice, quoted in the majority opinion (maj. opn. *ante*, pp. 4–5), the notice also stated the amount of payments that would be due if more than three tenants occupied a unit.

[3] While this fact has not yet been conclusively established, it is consistent with the pleadings, a declaration on file, and the briefing, and there is no contrary suggestion in the record. Should the facts differ, the defense would appropriately be asserted in the answer to the complaint.

defendants occupied the premises, and, as to them, the notice was absolutely, and literally, accurate.

Moreover, the statements in the notice were directed to "you," the recipients of the notice, as to whom they were accurate. Other than with respect to the possibility of multiple tenants, the notice did not purport to advise the defendants of the rights of others. There is obviously no reason for the notice to have done so, and the notice could not reasonably have been understood to do so.

Nor is there any requirement that the notice do so. Section 37.9A, which imposes the applicable requirement, provides, "Any notice to quit pursuant to Section 37.9(a)(13) shall notify the tenant or tenants concerned of the right to receive payment under Subsections 37.9A(e)(1) or (2) or (3) and the amount of payment which the landlord believes to be due." The majority opinion's implication that this provision requires the notice to state "the right to receive payment" of persons other than the person being evicted is unfounded and non-sensical. The provision necessarily refers only to the rights of the recipient of the notice because the "amount of payment which the landlord believes to be due" can only be the payment that is believed due to that tenant. The landlord obviously is not required to advise a tenant who is being evicted what rights other hypothetical occupants would have if they were being evicted.

Thus, the notice defendants received was in full, or "strict," compliance with the statute and the Rent Ordinance. Moreover, even if the reference to "tenant" rather than "Eligible Tenant" were considered to negate "strict" compliance, there unquestionably was substantial compliance sufficient to overcome any objection to the form of the notice. " 'Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the

3

substance essential to every reasonable objective of the statute.' [citation.] Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance." (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762,779.) While strict compliance with many conditions is necessary to enforce summary eviction, the conditions to which this standard has been applied are conditions failure to comply with which defeats the purpose of the statute. (E.g., *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 480–482; *Lamey v. Masciotra* (1969) 273 Cal.App.2d 709, 713–714.) The purpose of section 37.9, subdivision (a)(13) is to ensure that a tenant faced with an Ellis Act eviction is timely advised of the relocation benefits which he or she must receive if lawfully obligated to vacate the premises. The notice given in this case complied with that purpose in full. There is absolutely no reason to disregard the substance of the notice because of the inconsequential reference to a "tenant" rather than to an "Eligible Tenant."

Therefore, I would reverse the judgment.

POLLAK, P.J.

Trial Court:     San Francisco City & County Superior Court

Trial Judge:     Hon. Vedica Puri

Counsel:

Dowling & Marquez LLP, Curtis F. Dowling, Jak. S. Marquez for Plaintiffs and Appellants.

Fried & Williams LLP, Clifford E. Fried as Amicus Curiae on behalf of Plaintiffs and Appellants.

Stephen L. Collier for Defendants and Respondents.